That leaves very little usefulness, if any, to be accomplished under the first statute.

For reasons stated, the sentence and judgment of the lower court are annulled, avoided, and reversed. The defendant is discharged, and his bond canceled.

LAND, J. I concur in the decree.

PROVOSTY, J., dissents.

---

(49 South. 15.)

No. 17,581.

DUBUISSON et al. v. BOARD OF SUP'RS OF ELECTION OF PARISH OF ST. LANDRY et al.

In re SOILEAU et al.

(April 10, 1909. On Motion to Amend Decree, April 12, 1909.)

INJUNCTION (§ 80*)—ELECTION—CREATION OF NEW PARISH.

An election being held under an act of the Legislature (Acts 1908, p. 53, No. 53) submitting the question of the creation of a new parish to the vote of the people interested cannot be enjoined by individual taxpayers on the ground of the unconstitutionality of some of the provisions incorporated in the statute.

[Ed. Note.—For other cases, see Injunction, Cent. Dig. § 151; Dec. Dig. § 80.*]

(Syllabus by the Court.)

Action by E. B. Dubuisson and others against the Board of Supervisors of Election of the Parish of St. Landry and others. On an order declining to dissolve an injunction, A. E. Soileau and others applied for writs of certiorari and prohibition. Writs granted.

Dudley Louis Guilbeau, Augustus Hill Garland, Robert Harry, Robert Lee Garland, James Raoul Pavy, Leo Austin Fontenot, Martin Henry Thompson, Leon S. Haas, and James Clarke Henriques, for relators. Respondent judge (Gilbert Louis Dupré and Lewis & Lewis, of counsel), pro se.

LAND, J. The plaintiffs in the above-entitled suit, as residents and taxpayers of the parish of St. Landry, enjoined the holding of an election under Act No. 53, p. 53, of 1908, entitled "An act to create the parish of Evangeline," etc., on the ground that the portion of said statute, reading;

"If a majority of the votes cast at said election be in favor of the parish of Evangeline, the Governor shall issue his proclamation declaring that the said parish has been created"

—contravenes and violates article 278 of the Constitution of 1898, which provides as follows:

"All laws changing parish lines, or removing parish seats, shall, before taking effect, be submitted to the electors of the parish or parishes to be affected thereby, at a special election held for that purpose, and the lines or the parish seat shall remain unchanged unless two-thirds of the qualified electors of the parish or parishes affected thereby vote in favor thereof at such election."

On the presentation of plaintiff's petition with affidavit to the clerk of the court, the judge being absent, an injunction was granted as prayed for, on plaintiff's furnishing

bond in the sum of $1,000, inhibiting and re-straining the board of supervisors of elec-tion, the sheriff, and the publisher of the St. Landry Clarion from performing any of-ficial duties or doing any acts with reference to the holding of said election and the proc-lamation of the result. These proceedings were had on March 19, 1909, and on the next day the members of the board of supervisors answered, submitting the issues raised by the petition to the determination of the court, and O. E. Guillory and other residents, tax-payers, and electors intervened, with leave of the court, and prayed that the writs of in-junction be dissolved as having been issued without warranty of law, improvidently, and prematurely.

On March 27th the sheriff answered, adopt-ing the allegations and prayers of the said intervention. Later, the interveners filed an application to dissolve the injunction on bond, alleging collusion between the plain-tiffs and the defendants to prevent the hold-ing of the election on April 13, 1909, as fixed by the legislative act in question.

On April 2, 1909, E. A. Soileau and others, citizens, taxpayers, and duly qualified elect-ors, intervened in the suit, alleging that the suit and the injunction issued by the clerk of court, in the absence of the judge, were without warrant of law, as the court was without jurisdiction ratione materiæ to en-tertain a suit of this character or to issue an injunction in such a cause, and that the proceedings were premature.

Plaintiffs filed an amended and supple-mental petition setting forth that Act No. 53, p. 53, of 1908 is unconstitutional in assigning a representative in the General Assembly to the parish to be created under the name of "Evangeline," for the reasons that the constitutional limit of representation had already been reached, and that no new apportionment can be made until after the next census shall have been taken.

Plaintiffs answered the application of in-terveners to bond the injunction by specially denying their right to such relief, and by averring that the dissolution of the injunc-tion would work an irreparable injury.

Plaintiffs answered the intervention by a general denial, and for further answer re-iterated and reaffirmed the allegations con-tained in their original and supplemental petition, and assigned additional grounds of unconstitutionality.

The judge declined to dissolve the injunc-tion on bond, and overruled the plea to the ju-risdiction of the court filed by Emilie Soileau et al. Whereupon the said interveners filed the present application for writs of certiorari and prohibition.

The relators in their petition set forth the passage of Act No. 53, p. 53, of 1908, entitled "An act to create the parish of Evangeline and providing for the organization thereof," etc.; that by the provisions of said act it was made the duty of the Governor to direct the board of supervisors of the parish of St. Landry to order an election to be held on the second Tuesday in April, 1909, for the purpose of taking the sense of the legal vot-ers of the parish of St. Landry in regard to the creation of the parish of Evangeline; that the Lieutenant Governor, in the ab-sence of the Governor from the state, di-rected and instructed said board to call and order said election; and that said board did meet and order said election, and did cause the publication and proclamation of the said order to be published in the St. Landry Clarion in its issue of March 13, 1909. Re-lators then recite the filing of the suit and the injunction proceedings already mention-ed, and their vain efforts to have the injunc-tion dissolved and the suit dismissed.

Relators further aver that the clerk of said court and the judge thereof were with-out jurisdiction, ratione materiæ, to issue said injunction, and to entertain a suit of

this character, in the absence of statute permitting the enjoining of an election ordered and directed to be held by express legislative act.

Relators further aver that the issuance of said injunction was an illegal, arbitrary, high-handed, and unlawful act, and the clerk of said court was without jurisdiction to issue the same; and that the object in obtaining said injunction was to prevent the holding of said election, and to deprive the people of the parish of St. Landry of the opportunity of expressing their will at the polls on the 13th April, 1909, pursuant to the mandates of the General Assembly of the state.

Relators aver that all the contentions and claims of the plaintiffs, if well founded in law, could be settled in an orderly manner after the holding of said election; but, on the contrary, unless said election is permitted to be held, all the provisions of said act will be nullified and frustrated.

Relators show that as voters, taxpayers, and residents of said parish they are vitally interested in the result of said election; that they and others similarly situated have a right to vote at said election; and that it is absolutely impossible for them to obtain judicial relief except by an appeal to the supervisory jurisdiction of the Supreme Court.

The respondent judge for answer submits a duly certified copy of the record in said injunction suit.

Act No. 53, p. 53, of 1908 was passed for the purpose of creating a new parish out of the western portion of the parish of St. Landry, and of providing for the organization of the same. It was enacted that the question of the creation of the parish of Evangeline should be submitted to the legal voters of the parish of St. Landry at an election to be held on the second Tuesday of April, 1909—

"and if a majority of the votes cast at said election be in favor of the creation of the parish of Evangeline, the Governor shall issue his proclamation declaring that the said parish has been created; that the organization thereof shall remain in abeyance until a full set of officers shall have been chosen, in accordance with law, at the general state election of the year 1912 for said parish. But if a majority of the votes cast at said election be against the creation of the parish of Evangeline, this act to be null and void."

All of the provisions of the act are prospective, and made dependent on the result of an election to be held at a particular date.

The plaintiffs herein, as residents and taxpayers, obtained an ex parte injunction from the clerk of the court inhibiting and restraining the board of supervisors and the sheriff from performing their duties as election officers, and the proprietor of the official journal from publishing the proclamation of election. The ground for injunction was that the provision that the result should be determined by "a majority of the votes cast" is contrary to article 278 of the Constitution, requiring a two-thirds vote of the qualified electors of the parish or parishes to change the parish lines or remove parish seats. This grave constitutional question was submitted ex parte to the clerk of the court, and this official without delay granted the injunction as prayed for.

Relators cite Roudanez v. Mayor and Administrators of the City of New Orleans, 29 La. Ann. 271. In that case 43 citizens and property holders sought to enjoin the municipal officers from holding an election to decide whether or not a special tax should be levied and collected for the use and benefit of the New Orleans & Pacific Railroad Company. The alleged grounds for injunction were that the legislative act authorizing the elections and the tax proposed therein were violative of sundry articles of both the federal and state Constitutions. The railroad company intervened in the suit, and moved to dissolve the injunction on the

face of the papers, as being prematurely and improvidently sued out. This motion was sustained in the lower court, and the judgment was affirmed on appeal. Inter alia, the court said:

"We think that the danger apprehended is too remote and too contingent to form a basis for a proceeding in court to avert it."

One among the reasons assigned is that "the tax proposed may be voted down."

Relators also cite Town of Ponchatoula v. Police Jury, 120 La. 1040, 46 South. 16, in which the plaintiff sought to enjoin the promulgation of the returns of a local option election on the ground that the pretended election had was null and void in law. The gist of the decision is shown in the following excerpt from the opinion:

"Can an action be maintained to enjoin election proceedings before the result of the election has been proclaimed?
"We have no reason to answer otherwise than in the negative."

Relators also refer to the following cases as holding that in matters of election the jurisdiction of courts are purely statutory: State ex rel. Rees v. Foster, Judge, 111 La. 1087, 36 South. 200; State ex rel. Burke v. Foster, Judge, 111 La. 939, 36 South. 32; Le Blanc v. Michel, Secretary of State, 122 La. 339, 47 South. 632; and Felix et al. v. Michel, Secretary of State, 122 La. 352, 47 South. 638. The two last cases go to the extent of denying jurisdiction in the courts, in the absence of express statutory authority, to interfere with election officers in the discharge of their mandatory duties. We make the following extract from High on Injunctions (4th Ed.) vol. 2, § 1286:

"And when a board of municipal officers are authorized by law to call an election upon the question of voting a subscription in aid of a railway, and the election is called in accordance with the requirements of the statute, a court of equity has no power to enjoin the holding of such election. And the court having no jurisdiction in such case, its writ of injunction, if granted, will be held absolutely void,

and defendants are not guilty of a contempt in refusing to regard or obey it."

As to the right of the relators to intervene in the suit and to apply to this court for relief, the case cannot be viewed from the standpoint of litigation involving only private rights. The real parties in interest are the good people of the parish of St. Landry, and the real controversy is between the citizens who favor and the citizens who oppose the creation of the parish of Evangeline. The defendants in the case are neutrals in law as well as in fact.

The interveners represent the real defendants in interest. In the Roudanez Case, 29 La. Ann. 271, supra, the railroad company intervened, and moved to dissolve the injunction. No one questioned its right to intervene in the suit as a party in interest.

Plaintiffs cite the case of State ex rel. Forsythe and Robertson v. Judge, 42 La. Ann. 1104, 8 South. 305. In that case, an act of the Legislature having been passed to create the parish of Troy, certain persons were appointed to enumerate the inhabitants of the proposed new parish and of the parish of Catahoula, and it was provided that, if the enumeration should show that each of said districts contained 7,000 or more inhabitants, the Governor should issue his proclamation declaring the parish of Troy created, and order an election of officers therefor. Immediately after the promulgation of the act, the police jury of the parish of Catahoula and a number of taxpayers sued out an injunction restraining the persons named as enumerators from proceeding with the enumeration of the inhabitants. The alleged grounds for injunction were that the act was unconstitutional, null, and void. The defendants appeared and moved to dissolve the injunction on various grounds, of which one was that it was premature and improvidently issued. This defense was sustained, and the injunction was set aside. The plain-

tiffs appealed suspensively from the judgment. Whereupon the defendants applied to the Supreme Court for writs of mandamus and prohibition on the—

"broad predicate that the subject-matter of the injunction suit lies outside of the domain of judicial power, and that no court has the right to restrain by injunction the execution of an act of the Legislature of the character of the one in controversy."

The court in a well-considered opinion held that the injunction suit did not raise questions beyond the domain of judicial cognizance and power, and refused the relief prayed for by the relators. It is to be noted that there was no question of an election involved in the controversy. It is also to be noted that the Supreme Court then did not possess the extraordinary supervisory powers lodged in the present court under the Constitution of 1898. In the same case on the merits, the court said:

"Had plaintiffs awaited the completion of the enumeration and return made to the Secretary of State, an injunction would have been manifestly too late. It is our opinion that the injunction was timely and provident, and quashing it was error."

The leading case of State of Wisconsin ex rel. Adams County v. Cunningham, 81 Wis. 440, 51 N. W. 724, 15 L. R. A. 561, is also cited by counsel for plaintiffs. That was an original suit brought in the Supreme Court of Wisconsin, on the relation of the Attorney General on behalf of the state, praying for an injunction against the Secretary of State to restrain him, as such officer, from carrying into execution a statute commonly called the "Apportionment Act," and more particularly from giving notices of the election of members of Senate and Assembly as apportioned and districted by said act, on the ground of its unconstitutionality. Defendant filed a demurrer, which was overruled, with leave to answer over.

The Wisconsin court said that such a suit could not be brought by a private relator, as it was a matter exclusively publici juris, and held that it had jurisdiction of the subject-matter of the litigation.

In both of the cases cited the acts of the Legislature were being enforced by ministerial officers, and the courts held that the only remedy of the relators was by injunction to restrain the execution of laws alleged to be unconstitutional. It cannot be doubted that courts, as guardians of the Constitution, have jurisdiction to declare legislative acts to be null and void if found to be violative of the organic law of the land. Such jurisdiction, however, should be exercised with the greatest care and caution, after notice and hearing and due deliberation, as every act of the Legislature is presumed prima facie to be constitutional.

In the case at bar, however, we are not dealing with a statute which has, proprio vigore, the force and effect of law, but with a legislative proposition which has been referred to the people for their final ratification. The proposition may be voted down by the people, and may never become a law susceptible of enforcement.

In our opinion, this case is governed by the doctrine announced in the Roudanez and Town of Ponchatoula Cases, and in High on Injunctions, cited supra.

It is therefore ordered that peremptory writs of prohibition issue as prayed for by relators.

### On Motion to Amend Decree.

Plaintiffs have presented a petition praying that our decree herein be restricted to the dissolution of the injunction, and not be construed as dismissing plaintiffs' action in so far as they attack and seek to annul the act of Legislature as unconstitutional.

Our decree ordered that peremptory writs of prohibition issue as prayed for, and we do not consider that the prayer of relators includes the prohibition of further proceed-

ings in the main suit independent of the injunction. To set the matter at rest, we amend our decree by adding, "without prejudice to any rights the plaintiffs may have to prosecute their suit to annul the act on the grounds of unconstitutionality."