WARREN *et al. v.* BRANAN *et al.*

1. "Owing to their nature and the purpose of their creation, it is essential that the territory included in municipal corporations should be well defined and clearly bounded."

2. In so far as the act of December 20, 1899, "to incorporate the town of Kirkwood, in DeKalb county," undertook to establish "the corporate limits of said town," the provisions looking to that end were so indefinite, uncertain, and incomplete that the legislative intent can not be ascertained and given effect, even by a resort to all competent extrinsic evidence .available.

Argued February 2, — Decided March 2, 1900.

Petition for injunction. Before Judge Candler. DeKalb county. January 20, 1900.

*John L. Hopkins & Sons,* for plaintiffs.
*Arnold & Arnold,* for defendants.

FISH, J. By an act approved December 20, 1899, the General Assembly of this State undertook "to incorporate the town of Kirkwood, in DeKalb county, to confer certain powers on the municipal authorities of said town," and to prescribe the territorial limits thereof. See Acts of 1899, p. 233. The present proceeding was instituted by certain citizens and taxpayers of that town, with a view to testing the validity of this enactment, they contending, among other things, "that the description contained in the act relative to the property to be granted for municipal purposes" was so indefinite and uncertain that the territorial limits and boundaries of the proposed corporation were incapable of ascertainment.

1. It is unquestionably true, as was conceded by counsel for the defendant in error on the hearing before us, that: "Owing to their nature and the purpose of their creation, it is essential that the territory included in municipal corporations should be well defined and clearly bounded." 15 Am. & Eng. Enc. L. 1001. "Since the leading object of an American municipal corporation is to invest the inhabitants of a defined locality or place with a corporate existence, chiefly for the purposes of local government, it is obvious that the *geographical limits* or boundaries of the corporation *ought to be defined and certain. . .* Because residence within the corporation confers rights and

imposes duties upon the residents, and the local jurisdiction of the incorporated place is, in most cases, confined to the.limits of the corporation, it is necessary that these limits be definitely fixed." 1 Dillon's Municipal Corp. § 182. So the only question to be determined is whether or not the act under consideration was sufficiently full and explicit in the respect just indicated.

2. The second section of that act undertakes to describe by metes and bounds the territory to be embraced within "the corporate limits of said town" of Kirkwood. On the hearing in the court below it was shown that while the description given of the boundaries in contemplation was reasonably accurate up to a certain point, from thence different surveyors disagreed as to the line really intended by the legislature to be followed to the point next designated, and that the course prescribed from thence as the means of reaching the starting point so far diverged therefrom that the same could not be reached without arbitrarily ignoring the direction indicated and supplying an entirely new and independent boundary line. The diagram which follows will, in connection with the accompanying explanation thereof, furnish a better idea of the situation than we could hope otherwise to give.

From the "Beginning Point," the location of which is made definite by the act of incorporation, the contemplated boundary

may be traced with reasonable certainty along the course indicated by the letters a, b, c, d, e, and f. From a stake the position of which on the diagram is at e, and which is described in the act as being "immediately opposite the eastern line of the land of Mrs. P. L. Mynatt," the course directed to be followed is "thence in a southerly direction along said Mynatt line to a stake east of and opposite the *southern line* of the lands of Mrs. V. P. Sisson," (the point, most probably, indicated on the diagram by the letter G), and "thence in a *westerly* direction, *along the southern line of said Sisson,* to the beginning point." Were the course last prescribed strictly adhered to, the nearest approach of the line to the starting point would be at H, over half a mile (3033 feet) distant therefrom. After arriving at the point marked f, one surveyor undertook to run the boundary directly west for a considerable distance, and thence due south, along the land lines of the Mynatt property, ending at the point on the diagram marked X. From there he could only suggest that a line be arbitrarily run to the "Beginning Point" along the dotted line indicated. Other experts were of the opinion that the boundary could be made complete only by wholly ignoring the last course specified in the act and substituting therefor the course indicated on the diagram by the dotted line drawn from G to the "Beginning Point," or else undertaking to arbitrarily supply another and entirely new and distinct course, not hinted at in the act and over half a mile in length, from the southwest corner of the Sisson tract of land, along the dotted line running between H and the point of beginning.

It was earnestly insisted by counsel for the defendants in error, in a brief filed in behalf of their clients, that: "It can not be said that this act leaves a hiatus or gap, because the very language of the act in the concluding sentences fills it up by demanding a line to the beginning;" and "the mere difficulty in selecting the line will not prevent the court from finding it." In reply, we may say that the mere fact that the language of the act manifests an intention on the part of the legislature that the prescribed boundary should effectually encompass the territory designed to be set apart for municipal purposes, and that

the last course run should connect with the boundary line at the point of beginning, is of really little aid in determining *how* this result was intended to be accomplished.  Indeed, it is difficult to imagine a case where the legislative intent to bound on all sides, without any gap, the territority set apart to a municipality would not be self-apparent when the purposes of the enactment were taken into consideration.  But when the corporate limits of a municipality are not described otherwise than by metes and bounds, and the specification thereof is so indefinite and uncertain that the same can not be traced and followed from point to point, the means thus afforded of ascertaining the legislative intent as to the precise extent and location of the territory sought to be described must necessarily prove wholly inadequate; and counsel are in error when they assume that "the mere difficulty of selecting the line" which the General Assembly had in contemplation " will not prevent the court from finding it," — presumably by a resort to pure conjecture.  It is to be noted, in this connection, that so far as the present difficulty is concerned, counsel fail entirely to suggest any plausible theory whereby we would be warranted in saying which of the three dotted lines indicated in the above diagram was the course the legislature intended to be followed in locating the southeastern boundary of the town of Kirkwood.  So far as appears from the record before us, that town had not, prior to the passage of the act in question, any definitely established boundaries; nor is there anything in the act to indicate that, were this otherwise, the corporate limits of the contemplated municipality were to be determined with reference to any old boundaries or lines of demarkation which had previously existed.  On the contrary, it would seem that the legislature undertook, irrespective of all subsisting landmarks or recognized lines, to definitely prescribe the boundaries within which the territory set apart for municipal purposes should be embraced.

The case in hand is totally unlike that which would be presented if a landowner, after stating generally in a deed of conveyance his intention to convey all of a certain tract of land upon which he resided or which was locally known by a designated name, should, in attempting to describe the premises by

metes and bounds, fail to connect all of the several boundary lines, or inaccurately define the location of one or more of the same. In that event, the intention to convey a tract of land which had previously been laid out and which had existing boundaries capable of ascertainment being manifest, a court of justice would be warranted in endeavoring to give effect to such intention, even though such course involved disregarding to some extent the description contained in the deed of conveyance and fixing the correct boundaries through the aid of extrinsic evidence making clear the exact location of the same. The propriety of so doing in a case calling for an application of the maxim, falsa demonstratio non nocet, was fully recognized in *Rogers* v. *Rogers*, 78 *Ga.* 688. At the same time, however, this court took pains to point out that all the authorities agreed that this doctrine had no application to a case where the instrument under consideration did not refer in sufficiently definite terms to specific property the precise location and extent of which was capable of ascertainment by a resort to aliunde evidence.

In the case now before us, the extent and boundaries of the territory to be included within the corporate limits of the town of Kirkwood were, by the act of 1899, for the first time sought to be determined and established. A resort to extrinsic evidence as an aid in endeavoring to arrive at the legislative intent with regard to the contemplated location of the southeastern boundaries of that town would therefore be futile, as was evidently recognized by the parties to this litigation; for no attempt to show that Kirkwood was enclosed by definitely established lines previously run or recognized by its inhabitants was made on the hearing below. Nor would it benefit the defendants in error were we, in compliance with the suggestion of their counsel, to apply the maxim above alluded to, and thus expunge from the description contained in the act of incorporation so much thereof as refers to the course to be run "in a westerly direction, along the southern line of said Sisson," upon the idea that this was an erroneous specification, inasmuch as a line so run could not possibly connect with the beginning point, as was the result manifestly contemplated. To eliminate this part of the description would have no effect other than to leave the last

course definitely fixed by the description in the act as running no further than the point marked G on the diagram presented above, in the event that point, rather than that indicated by the letter X, correctly indicates the location of the "stake east of and opposite the southern line of the lands of Mrs. V. P. Sisson," which is a matter we are not now called upon to decide; for even if the stake last referred to was really intended to be understood as being at X, there would still remain a very considerable distance from thence to the starting point, to traverse which no boundary line would be specified. We can not undertake arbitrarily to supply so grave an omission. Were we to attempt to do so, we are firmly of the belief that the legislative intent would be defeated rather than given effect. It is reasonable to presume that, in prescribing the course "in a westerly direction along the southern line of" the Sisson estate, the General Assembly acted deliberately and advisedly, with a view to excluding some portion, at least, of the lands lying immediately south of that line. Exactly what portion, or its precise extent and location, we can, however, at best only vaguely surmise. How far the course "in a westerly direction" was to run along the southern boundary of the Sisson property is not remotely specified, or indicated otherwise than by the somewhat casual expression of a purpose to eventually arrive at the beginning point. Whether this course was designed to extend to the southwestern corner of Mrs. Sisson's property, or beyond, or only to some intermediate point, before turning southward in the direction of the beginning point, is a matter left wholly to abstract speculation. This being so, we are constrained to hold that the provisions of the act seeking to establish the territorial limits of the town are so indefinite, uncertain, and incomplete that the legislative intent can not be ascertained and given effect, and that therefore the act is wholly inoperative. The court erred in not granting the injunction prayed for.

*Judgment reversed. All the Justices concurring.*