## TOWN OF ROSWELL *v.* EZZARD.

1. The act approved September 13, 1883 (Acts 1882-3, p. 337), changing the corporate limits of the town of Roswell as fixed by the act of 1853, construed in connection with the original act of incorporation, fixes the eastern and northern boundaries of the town of Roswell as follows: Beginning where Vickery creek empties into the Chattahoochee river, and running north along this creek to the mouth of Ox-bow creek, thence north along Ox-bow creek until the county line between Cobb county and Milton county is reached, thence along the line between the two counties to the northern line of lot 427, thence west along the northern line of lots 427, 411, and 388. The territory embraced in the town of Roswell as thus defined lies exclusively within the limits of Cobb county.

(*a*) The act approved August 7, 1906 (Acts 1906, p. 121), authorizing an election to be held in any town having more than five hundred inhabitants, where the corporate limits of such town embrace territory in two or more counties, for the purpose of changing the county line so as to bring the town wholly within the limits of one of the counties only, has no application to the town of Roswell; and the election held thereunder, to decide whether the line between Cobb and Milton counties should be so changed as to include the town in the latter county, was absolutely void.

2. At the instance of a resident citizen and taxpayer, equity will restrain proceedings instituted under color of law, but which are illegal, the effect of which is designed to change his domicil from one political subdivision to another.

3. Under the act of 1906, providing for the change of county lines within the limits of incorporated towns, it is the duty of the mayor and clerk of the municipality to certify the result of the election to the ordinaries or boards of county commissioners of the counties affected. Such mayor and clerk are proper and necessary parties, where the certification of the result of the election is sought to be enjoined. The act, however, declares that the municipal authorities, after the result has been certified by the mayor and clerk, shall proceed, in connection with the county authorities, to readjust and change the lines of the counties so affected in such a manner as to include the municipality wholly within the limits of the particular county fixed upon by the election. Where the prayer of the petition is not only to enjoin the town from certifying the result, but also to enjoin the municipality from proceed-

ing to readjust and change the lines between the counties as provided by the act of 1906, the municipality is both a proper and necessary party.

Argued December 21, 1906.—Decided April 10, 1907.

Injunction.   Before Judge Gober.   Cobb superior court.   November 16, 1906.

By an act of the General Assembly, approved February 16, 1854 (Acts 1853-4, p. 265), the town of Roswell was incorporated.   The territory included within the corporate limits embraced "an area of one mile in every direction from the Presbyterian Church in said village."   The town was described as being in the county of Cobb, both in the title and body of the act of incorporation.   By an act approved December 18, 1857 (Acts 1857, p. 36), the county of Milton was created and laid out from the territory theretofore embraced within the counties of Cherokee, Cobb, and Forsyth.   So much of the boundary between the new county and the county of Cobb as is material to be considered here was defined as follows: "To commence at Grogan's Ferry on the Chattahoochee river, run a straight line to the northeast corner of the incorporation of the city of Roswell, leaving the incorporation in Cobb county," etc. In 1883 (Acts 1882-3, p. 337) "the charter of the town of Roswell, Cobb county, Georgia," was amended by changing its corporate limits, making the new boundaries as follows: "Beginning at the southeast corner, where Vickery creek enters into the Chattahoochee river, running north along said Vickery creek, making it the corporate line to the mouth of Ox-bow creek, thence north along said Ox-bow creek to where it crosses the north boundary line of lot of land No. 427, thence west along the north line of lots No. 427, 411 and 388 to the northwest corner of said lot No. three hundred and eighty-eight, .thence south along the western line of said lot number 388 for two miles to the southwest corner of lot of land number 381, thence east along the south line of said lots numbers 381, 418 and 420 to a point where said south line of lot 420 crosses the Chattahoochee river, thence northeast along the northern bank of said river to the starting point at the mouth of Vickery creek, which line last above mentioned shall, after the passage of this act, be the boundary line constituting the corporate limits of said town of Roswell."

The act approved August 7, 1906 (Acts 1906, p. 121), provided

that whenever the boundary-lines of one or more of the counties of this State shall lie within the corporate limits of any town or city having more than five hundred inhabitants, and it is desired to so change the county lines as to bring the town or city wholly within the limits of one county only, the change might be effected by a majority of the voters of such municipality, at an election to be held by the municipal authorities for that purpose, voting so to change the county lines, the result of which election should be certified by the mayor and clerk of the town or city to the authorities of the respective counties; whereupon the municipal and county authorities "shall . . proceed to readjust and change the lines of the counties affected in such manner as to include the said municipality wholly within the limits of the particular county fixed upon by said election." Under the provisions of this act an election was held in the town of Roswell to determine the question as to whether the line between the counties of Milton and Cobb should be so changed that the territory embraced within the town of Roswell should thereafter lie wholly within the county of Milton. A majority of the voters at the election voted for the change. By his petition the plaintiff seeks to enjoin the town of Roswell, its officers and agents, from certifying the result of the election to the ordinaries of Cobb and Milton counties, and from proceeding to readjust and change the lines between the counties as provided by the act of 1906. In his petition he alleges, among other things, that he is a citizen of Cobb county, and a taxpayer and resident of the town of Roswell therein; that the election held by virtue of the act of 1906 was illegal and void, (1) because no part of the town of Roswell lay within the limits of Milton county; (2) that the act of 1906 was unconstitutional, because it was in contravention of the general law which provided how county lines within this State may be changed; (3) that the practical effect of changing the county lines so as to include the town of Roswell within Milton county would be to bisect the county of Cobb, leaving its two parts segregated, with a strip of Milton county embracing the town of Roswell intervening; and (4) that the election was not held in compliance with the act of 1906. He further alleged that he and others would be specially injured by changing the county lines, which would disturb his rightful and legal domicil and make uncertain any act and transaction concerning his

citizenship and property, thereby jeopardizing his personal liberty. The town of Roswell was named as the sole defendant, and, in response to a rule nisi to show cause why an injunction pending the suit should not be granted as prayed, urged certain special demurrers, which were met in all essential points by amendments to the petition. The defendant further urged by demurrer that, under the facts alleged, the plaintiff was not entitled to the relief prayed, and that there were no proper parties defendant to the suit. The municipality also filed its answer, admitting many of the averments of the petition, but denying the allegation that no part of the county of Milton was embraced in the town of Roswell, and also denying that the legal effect of certain matters alleged in the petition would result as contended by the plaintiff. Upon the interlocutory hearing an injunction was granted; and exception is taken to the grant of the injunction.

The following sketch will be referred to in the course of the opinion for the purpose of illustrating the question of whether any part of the town of Roswell, under the act of 1883, lay within the limits of Milton county.

Dotted lines show disputed territory.

Circle shows original boundary.

Heavy lines, with dotted arc, show present limits.

*B. F. Simpson, J. P. Brooke,* and *Peeples & Jordan,* for plaintiff in error.   *W. R. Power,* contra.

EVANS, J.   (After stating the foregoing facts.)

1. The primary point of difference between the litigants in this case is whether any part of Milton county is embraced within the limits of the town of Roswell.   The town contends that the small parcel of land included within the dotted lines in the northeast corner of the foregoing map lies in the county of Milton, and is embraced within its municipal limits.   The defendant in error,

on the other hand, denies that any portion of Milton county is included within the corporate limits of the town. The basis of this dispute arises from a construction of the act of 1883, defining the boundaries of Roswell. A reference to this act, as quoted in the statement of facts, shows that the General Assembly evidently had in mind that Ox-bow creek crossed the northern boundary of land lot 427, whereas, in truth, this creek does not traverse that lot, but crosses lot 450, in the same tier of lots with 427, and adjacent thereto. Both sides recognize the soundness of the principle stated in the case of *Warren* v. *Branan,* 109 *Ga.* 835, that it is essential, for the validity of an act incorporating a town, that the territory included in the municipal corporation shall be so well defined and clearly bounded that the legislative intent may be ascertained and given effect. The town contends, that it was the purpose of the legislature to prescribe, for the northern boundary of the municipality, an east and west line running along the northern boundary line of lots 388, 411, and 427, to a point on Ox-bow creek; that though it was erroneously stated that the point of intersection would occur on the northern line of lot 427, the legislative purpose would be accomplished by an extension of this line beyond lot 427 in an easterly direction until it intersects Ox-bow creek. In support of this contention our attention is called to the general rule relating to the location of the boundaries in a deed, that where one of the calls is for a natural boundary, and the next call is to an established line or a natural boundary, the line designated by the last call will be projected to the natural boundary. (Rowe *v.* Cape Fear Lumber Co., 133 N. C. 433); and it is insisted that the same rule is applicable to the interpretation of the legislative acts incorporating towns and villages. A case much in point to support this view is that of In re Ipswich, 13 Pick. 431, where it was said: "In the act incorporating the town of Hamilton the boundary line is described as 'running by Ipswich river to a wall, etc., then by said wall,' etc. The wall was nearly at right angles to the river, and from the end of it was a wooden fence about two rods, and beyond that the bank was so steep that a fence was unnecessary. It was held that the boundary line did not cross the river diagonally to the end of the wall, but that it followed the thread of the river until it came to a point at which the wall, if protracted, would intersect the thread of the river, and thence,

making an angle, it took the line of the wall." But this construction of calls, whether found in a deed or in a legislative act, is subject to the limitation that the directions indicated by the calls shall be considered in connection with all the calls; and, when this rule of construction is being applied to a legislative act, not only should all of the calls defining the territorial limits of the incorporated town be considered, but also the intent of the legislature, as gathered from its various enactments, as to whether the territory intended to be included within a town lies within a particular county, or whether the descriptions of the boundaries are without reference to the county in which the town would be located.

The town of Roswell had its municipal birth in the county of Cobb. The original act of its creation, in its first section, declared that "the village at and around the factory buildings of the Roswell Manufacturing Company, in the county of Cobb, in this State, embracing an area of one mile in every direction from the Presbyterian Church in said village, be and the same is hereby incorporated by the name and style of the town of Roswell." The seventh section of the act declares that the intendant of the town, and each member of the board of commissioners, to all intents and purposes shall be a justice of the peace, so far as to enable them or any of them to issue warrants for all offenses committed within the town, to discharge, bind over, or commit such offenders to jail, "and the jailor of said county of Cobb is required to receive and keep in the common jail of said county all such offenders as may be committed as aforesaid, till discharged by due course of law; and in the event of the inability of the persons so committed to pay the jail fees, the said corporation shall be liable for the payment of the same." The amendment changing the corporate limits recognized the location of the town of Roswell in Cobb county. The title of the act of 1883 is, "An act to amend the charter of the town of Roswell, Cobb county, Georgia, by changing the corporate limits of said town, and for other purposes." The only part of the original act of incorporation affected by the amending act was that prescribing its boundaries. The very title of this amendment recognized the location of the town of Roswell in Cobb county. The act of 1883 does not undertake to amend either the caption of the original act or the seventh section thereof, which confers upon the municipal officers the authority of a jus-

tice of the peace in so far as they may hold courts of inquiry and commit offenders to the common jail of Cobb county. It does not change the provision in the original act requiring the jailor of Cobb county to receive and safely keep all persons committed thereto by the intendant and commissioners of the town until discharged by due course of law. And the legislative purpose to include the town of Roswell in Cobb county has been indicated in all of the various acts referred to in the statement of facts. When the county of Milton was created, the boundary line between it and Cobb county was carefully defined so as to exclude Roswell from the new county. We gather from these three legislative enactments an express intent that the territorial limits of the town of Roswell should be embraced in the county of Cobb. We will therefore give effect to this legislative purpose by declaring the eastern and northern boundary lines of the town of Roswell under the act of 1883 to be as follows: Beginning where Vickery creek empties into the Chattahoochee river, and running north along this creek to the mouth of Ox-bow creek, thence north along Ox-bow creek until the county line between Cobb county and Milton county is reached, thence along the line between the two counties to the northern line of 427, thence west along the northern line of lots 427, 411, and 388. Giving this construction to the act, the territory within the municipal limits of the town of Roswell, as defined by the act of 1883, lies exclusively within the limits of Cobb county.

2. One point raised by the demurrer is that the petition does not disclose that the plaintiff would sustain damage unless the writ of injunction should issue. While it may be true that a citizen has no vested right to determine in what particular political division of the State the spot he selects for his residence shall remain (*Hamrick* v. *House,* 17 *Ga.* 57), yet he may protest against the enforcement of a law designed to change his domicil, under circumstances where it is shown the law has no application. See *Mayor of Macon* v. *Hughes,* 110 *Ga.* 796. The municipal authorities of Roswell were manifesting a purpose to effectuate the results of the election, held under the act of 1906, to change the lines between Cobb and Milton counties. This act had no application to the town of Roswell, which lay wholly in Cobb county. Plaintiff is a citizen of Cobb county, and a taxpayer and citizen of the

town of Roswell, and as such has a direct interest in preserving the territorial integrity of his county, and the right to protest against an illegal change of his domicil. A court of equity will not turn a deaf ear to his complaint that the municipality, under color of law, is attempting to change his domicil, and require him to meet each new condition resulting from such attempt by a separate proceeding. Why wait until the tax-collector of the county to which he is sought to be transferred proceeds to enforce the payment of tax, or he is summoned to do jury duty, or attempts to vote, before making the point that his residence was not changed by this election, when all of these and sundry other complications may be avoided by the grant of an injunction?

3. The town of Roswell was a proper and necessary defendant. Under the act of 1906 the municipal authorities took the initiative in putting that act into effect. The act provides that "the municipal authorities of said town or city shall submit the matter as herein provided to the lawful voters of said municipality." The matter referred to is a change of county lines so as to include the entire municipal territory within the confines of one of the counties. The act requires the mayor and clerk of the town or city to certify the result of the election to the ordinaries or county commissioners of each of the counties affected. When the result of the election has been so certified by the mayor and clerk, the act declares that "the said municipal and county authorities shall thereupon proceed to readjust and change the lines of the counties affected in such manner as to include the said municipality wholly within the limits of the particular county fixed upon by said election, and shall cause a description and map of the new lines to be filed and recorded in the offices of the clerks of the superior courts of each county affected, and shall cause an official notice of the change and description to be published once a week for four weeks in a public gazette in their respective counties," etc. The prayer of the petition is not only to enjoin the town from certifying the result, but also to enjoin the municipality from proceeding to readjust and change the lines between the counties as provided by the act of 1906. This latter duty is imposed upon the municipal authorities, in the performance of which they do not act as individuals, but in behalf of the municipality. It is municipal action, and the municipality is the proper party to en-

join from such action. As the act imposes the duty of certifying the result of the election on the mayor and clerk is nominibus,. and not upon the municipality, they were necessary parties to enjoin the certification of the result of the election in the prescribed method. Even though the mayor and the clerk should be necessary parties to a proceeding to enjoin the certificátion of the election, the municipal corporation was a proper and necessary party where it was sought to enjoin municipal action by the municipal authorities.

The foregoing discussion disposes of all the questions necessary for an adjudication of the case, and we forbear discussing the constitutional and other questions raised by the record.

*Judgment affirmed, with direction. Fish, C. J., absent. The other Justices concur.*