TOLBERT *v.* LONG, ordinary.    O'KELLEY *v.* LONG, ordinary.

1. Equity will entertain jurisdiction of a petition by a citizen and taxpayer to enjoin against the declaration of the result of an election held under a special act establishing a board of commissioners for a named county, defining their duties, etc., which act provides that it shall not become operative in the county unless ratified by a vote of the people, where it is charged that the whole act is unconstitutional or infected with other illegality frustrating the legislative plan of ratification.

2. Under the facts of this case, the amendment and the second petition did not amount to a second application for injunction to restrain the performance of the same act.

3. The act approved August 16, 1909 (Acts 1909, p. 425), providing for the creation of a board of commissioners for Madison county, defining their duties, etc., and which further provided that the act should not go into effect until ratified by the people of the county, clearly discloses the legislative plan to be that all persons voting at such election should

be constitutionally qualified voters; and as the designation of such voters in the 21st section of the act totally disregarded the added suffrage qualifications prescribed by the constitutional amendment of 1908, the legislative plan of referendum to the constitutionally qualified voters was defeated.

4. For the reason given above it becomes unnecessary to decide the other constitutional objections raised against the act.

MARCH 19, 1910.

Petitions for injunction. Before Judge Meadow. Madison superior court. January 8, 1910.

John J. Strickland, John E. Gordon, and George C. Thomas, for plaintiffs. Cobb & Erwin and Henry C. Tuck, for defendant.

EVANS, P. J. On August 16, 1909 (Acts 1909, p. 425), an act was approved, creating a board of county commissioners for the County of Madison, and providing that the same should not go into effect until ratified by the people of the county. H. H. Tolbert, who held the office of county commissioner under a prior act (Acts 1906, p. 441), in his capacity as holder of that office, as well as a citizen and taxpayer of the county, applied for an injunction to restrain A. H. Long, ordinary, from calling the election provided for in the act. The injunction was refused, and Tolbert excepted. The bill of exceptions of Tolbert was dismissed by the Supreme Court, because it appeared that no supersedeas had been granted, and the election had been held prior to the hearing in this court. Before the judgment of the Supreme Court was made the judgment of the superior court, Tolbert amended his petition, alleging that the election had been held and that a majority of those voting thereat had voted in favor of adopting the act, and also that an election had been held under the act for the three commissioners therein provided for, and that White, Davis, and Fitts had received the highest number of votes, and claimed to be elected as commissioners. The attacks made upon the validity of the act in the original petition were renewed in the amendment, and the prayers were that the ordinary be enjoined from declaring the result of the two elections, and that the persons elected as commissioners at the latter election be enjoined from performing any duties as such by virtue of their election. A rule nisi was granted for a hearing on January 8, 1910. S. C. O'Kelley and others, alleging themselves to be citizens and taxpayers of the county, also filed their petition to enjoin the ordinary from declaring the results of the two elections

held under the act of 1909, and to enjoin the three new commissioners from acting as such, and to enjoin Tolbert from turning over the papers in his possession as county commissioner to the new commissioners. The same attack made upon the validity of the act of 1909 in the petition of Tolbert against Long, ordinary, was made in this petition. A rule nisi was granted, requiring the ordinary and the three new commissioners to show cause on January 8, 1910. Agreeably to these orders the defendants showed cause by demurrer and by answer, and after hearing the evidence the court refused a temporary injunction; and the plaintiffs in the two suits sued out their respective writs of error.

1. By demurrer it was urged that the court was without jurisdiction to interfere in any way with the holding of the election. This court on several occasions has adverted to and recognized the general principle that a court of equity ordinarily will not interfere with the holding of elections by virtue of the exercise of the political power for the determination of the choice of public officers or other matter submitted to a popular vote. The general rule has been applied in the case of persons who claimed that they would be deprived of their right to engage in a particular business if the special law was made effective by a popular vote. In such cases it was held that the attack on the law on the ground that its operation is destructive of property, or property rights, in advance of the election declaring it operative, was premature, and that the courts will wait until the law is attempted to be put into operation, before the person who claims injury to, or destruction of, his property will be heard to complain of the unconstitutionality or illegality of the law. *Scoville* v. *Calhoun,* 76 *Ga.* 263; *Clayton* v. *Calhoun,* 76 *Ga.* 270. Nor will a court of equity entertain original jurisdiction in the contest of an election. *Caldwell* v. *Barrett,* 73 *Ga.* 604; *Ogburn* v. *Elmore,* 121 *Ga.* 72 (48 S. E. 702); *Harris* v. *Sheffield,* 128 *Ga.* 301 (57 S. E. 305). But an exception has been recognized to the general principle, where the constitutional rights of a citizen and taxpayer are sought to be invaded by an attempt to make an unconstitutional or inapplicable law operative through the means of popular election. *Mayor &c. of Macon* v. *Hughes,* 110 *Ga.* 795 (36 S. E. 247); *Town of Roswell* v. *Ezzard,* 128 *Ga.* 43 (57 S. E. 114); *Town of Maysville* v. *Smith,* 132 *Ga.* 316 (64 S. E. 131); *County of DeKalb* v. *Atlanta,* 132 *Ga.* 727 (65 S. E. 72). The

equitable jurisdiction in those cases arises out of the necessity of adequate protection of the constitutional rights and guaranties of citizenship, which constitutional rights can be more effectually protected by restraining any attempts upon their encroachment through the medium of an election, than by waiting until the election has been held. If the legislative enactment proposed in the present case to become operative through the medium of a popular election be violative of the organic law of the land, it is the right of a taxpayer of the territory to be affected to say that the public funds shall not be used to defray the expenses of an illegal election. Besides, no adequate remedy at law occurs to us, to which the taxpayer might resort after the election had been duly declared in favor of the ratification of the enactment, wherein he could assert the unconstitutionality of the law. Certainly the remedy to enjoin the holding of the election would be more direct, and better calculated to avoid complications, than to remain passive until the law had been declared before beginning a proceeding to test its constitutionality. An instance is conceivable where a majority of the voters included within the limits of the territory to be affected might be decidedly of the opinion that the enactment was opposed to the constitution, and for this reason abstain from voting. If they refrained from voting, the law must be adopted, if at all, by a minority vote, or, if those voters take part, they must do so with the consciousness of participating in an illegality and running the risk of estopping themselves from thereafter calling in question the constitutionality of the act under which the election was held. There is a wide difference between a court of equity interfering under such circumstances, and holding aloof where the issue is that of a contest of an election. We think there was equity in the petition.

2. It is insisted, that the effect of the amendment, as well as the new petition, is but a second application for an injunction; that, although a second petition was filed by other plaintiffs than appeared in the first, inasmuch as in the former case the plaintiff claimed relief as a taxpayer, and the plaintiffs in the latter case base their right to relief as belonging to the class represented by the plaintiff in the former suit, the effect of the rule in reference to granting a second application for injunction can not be evaded by merely changing the representatives of the class. We recognize the

rule that a second application for injunction should only be granted in the exercise of a sound discretion, and ordinarily would be denied unless the petition set up facts which were unknown at the time of the first application; but we do not think that this rule has application to the present causes. The 20th section of the act approved August 16th, 1909, provides "that this act shall not become operative until it has been submitted to a vote of the people on the 1st Saturday of October next, the election to be called by the ordinary of the county and to be held by managers appointed by the ordinary, and said managers shall hold the election under the same rules as apply to regular county elections and report the ballots cast in the election, and the result thereof, to the ordinary, who shall immediately declare the result." When the case was before this court on the former writ of error, it appears from the opinion therein rendered that the reason given for its dismissal was that the prayer of the petition was limited to enjoining the calling of an election, and that, inasmuch as the election had been held and no supersedeas had been taken, the act sought to be enjoined had been fully performed. It was specially pointed out that there was no prayer that the ordinary should be enjoined from canvassing the returns, nor that he should be enjoined from declaring the result of the election, nor any prayer for general relief. See *Bond* v. *Long,* 133 *Ga.* 639 (66 S. E. 779). The rule which the defendant in error invokes is applicable only where the second application for injunction is to operate upon the same act sought to be enjoined in the first application. The plaintiffs in error did not seek to enjoin anything further than the calling of the election in their first application. In the amendment to the first petition and in the second petition, the prayer is to enjoin the declaration of the result of the election.

3. The act provides for two elections. The first one is to determine whether the act itself shall have the force of law. The 20th section thereof declares that the act shall not become operative until it has been submitted to a "vote of the people." Manifestly the referendum by the legislature is to the people who, under the organic law, are entitled to vote. It would be the wildest vagary to impute to the legislature an intention to permit people of all ages and sexes, without any regard to suffrage qualifications, to participate in an election called for the purpose of determining whether

its enactment should become law in that particular locality. The election shall be held (so the 20th section of the act reads) "under the same rules as apply to regular county elections." At such an election only voters constitutionally qualified to vote may legally participate. The legislative scheme is, therefore, plain that the act is to operate as law only in the event it is ratified by a majority of the constitutionally qualified voters of Madison county. The second election referred to in the act is contingent upon the adoption of the act by the qualified voters of the county. When the act becomes operative as law as the result of the first election, then it is declared that the commissioners to fill the office provided in the act "shall be elected by the people at an election to be held in said county on the 4th Wednesday in October, 1909." Again we see the legislative purpose to be that the commissioners shall be elected in a legal manner and at a legal election, and the "people" referred to as the electorate means the voters constitutionally qualified to participate in an election of county officers. A contrary construction would ascribe to the legislature an intent to provide for an election which would not be legally effective.

After declaring that the act shall be effective only when adopted by a majority of the qualified voters of the county, in the 21st section it is undertaken to define who are such qualified voters. This section provides "that in the elections called by this act all persons eligible to vote in the last general election for Governor and other State officers shall be eligible to vote in this election." Since the last general election referred to in the act the constitution of the State had been amended, by which the qualifications of voters had been changed in many vital respects. Other and very stringent qualifications were added, and the constitutional amendment had been duly promulgated and was an integral part of the organic law at the time of the passage of the local act. By allowing all voters in the last general election to participate, without regard to the newly added constitutional qualifications, the legislative plan of a referendum to the constitutionally qualified voters would be frustrated. We can not think that the legislature intended that the act should become operative, except upon a majority vote of such voters as were constitutionally qualified to vote, and the inclusion of other voters as eligible to vote made it impossible to effectuate this intention.

4. There are many other attacks made upon the constitutionality of the act; but these questions become academic under our holding that no valid election can be held under the local act, for the reason given in the foregoing division of the opinion. It would be idle to enter into a discussion of their merits.

*Judgment reversed. All the Justices concur, except Fish, C. J., absent.*