CHENEY *et al. v.* RAGAN *et al.*
DANIEL *et al. v.* JENKINS *et al.*
BOARD OF COMMISSIONERS OF CALHOUN COUNTY
*et al. v.* DOZIER *et al.*

Where an election is held upon the issue as to whether there shall be a change or removal of the county-site of a named county in this State, the petition for the election should be for an election for the removal of the county-site, and the order calling the election should show that it is one for the removal of the actual county-site, without specifying a particular place to which it shall be removed, so as to leave to the qualified voters free choice between the place where the county-site is actually located and any other place in the county. And where the order for the election specifies the place to which the proposed removal shall be made, so as to make the contest between the actual county-site and a particular designated place, and an election is held under such order, the election is invalid.

(a) A court of equity will intervene, upon petition filed in time, by writ of injunction to prevent the declaration of the result of such an election.

(b) The court erred in refusing to dismiss the petition for mandamus, and in granting the mandamus.

(c) The court did not err in granting the injunction against the issuance of county warrants to managers of the election in question, and in restraining payment of the same.

Nos. 2546, 2575, 2587. July 15, 1921.

Petitions for injunction, and for mandamus. Before Judge R. C. Bell. Calhoun superior court. March 8, 1921.

Cheney and others filed their petition seeking an injunction which would restrain the defendants from holding a special election involving the removal of the court-house from Morgan, Calhoun County, Georgia, to the town of Edison in that county, and from consolidating the returns for that special election; petitioners contending that the proceedings preliminary to the election were void for the reasons pointed out in the petition, that the petitions calling for the election under the statute were themselves illegal, and that the proposed election itself should be declared void. The court upon the hearing of the case refused an injunction, and the plaintiffs excepted upon numerous grounds.

In the second case above stated Jenkins and others sought a mandamus absolute, to require the managers at the same election

to consolidate the votes cast at the election, and to declare the result. A demurrer to this petition was overruled, and to this order the defendants excepted. They filed a joint answer assigning various grounds in support of their contention that a mandamus absolute could not properly be granted against them; and the relators demurred to this answer, on general grounds. This demurrer was sustained, and the respondents excepted. No question of fact being involved in the case, the court entered a final judgment granting a mandamus absolute. Error is assigned upon this judgment.

In the third case above stated a petition was filed, seeking to enjoin the Board of Commissioners of Roads and Revenues of Calhoun County from issuing a county warrant or warrants to any of the superintendents of the election already referred to, for holding and conducting said election, which was alleged to be illegal and void; and to enjoin the Bank of Leary, the county depository (the office of treasurer of the county having been abolished), from paying out of the county funds any warrant or order that might be issued to the superintendents of the election. The petitioners in all of the cases were citizens and taxpayers of Calhoun County.

These three cases were argued together and each of them brings under review the principal question involved, that is, whether the special election under consideration was illegal and void.

. *J. H. Dorsey, W. I. Geer,* and *Glessner & Collins,* for plaintiffs in error in the first two cases, and defendants in error in the third case.

*Little, Powell, Smith & Goldstein, A. L. Miller, E. L. Smith, J. M. Cowart, B. W. Fortson,* and *Pottle & Hofmayer,* contra.

BECK, P. J. (After stating the foregoing facts.) As these cases were argued together they are decided together, as each of them involves one question which is the principal question in each of the cases; and where any one of the three cases involves a distinct question that must be decided, that will be indicated by special reference to the case in which the question is raised.

1. The legality of the election to determine whether there should be a removal of the court-house of Calhoun County or not is brought in question in each of these three cases. Certain subsidiary questions are also raised, the greater part of which it is not necessary to decide, in view of the conclusion we have reached as to the main

question, that is, the legality of the election. And the determination of that question involves, in the first place, a construction of sections 486 and 488 of the Civil Code, which relate to the change of county-sites and the indorsement on the ballots cast in the election held for that purpose. Section 486 relates to the petition that shall be made to the ordinary for the removal or change of the county-site, the order to be granted by the ordinary and the notice thereof, and the persons qualified to vote in such election, and the period at which such elections may or may not occur. Section 488 is in the following language: "At said election all voters in favor of removal, and to what place, shall indorse on their ballots 'For removal,' and those who are opposed to removal shall indorse on their ballots 'Against removal,' and if two thirds of the votes cast at said election are in favor of removal to any one particular place, the General Assembly next convening after said election may provide for the removal of said county-site by appropriate legislation." And a construction of this latter section is made necessary by one of the principal questions raised in these cases; and that is, whether an election, called by an order granted by the ordinary, in which order it is recited that an election is called for the determination of the question as to the removal or change in the county-site from the actual county-site to a named town, and in which it is further recited that all voters in favor of the removal of the county-site shall have indorsed on their ballots "For removal of the county-site to Edison, Georgia," and those voters who are opposed to the removal shall indorse on their ballots "Against removal," was a valid election upon the question of the change or removal of the county-site. After a careful consideration of all the provisions and terms of section 488, the conclusion forces itself upon us that an election held in pursuance of the order referred to was not a valid, legal election. In section 488 it is declared that at an election for the purpose of changing the county-site all voters thereat in favor of the removal shall indorse on their ballots "For removal," and to what place. The language of the statute prescribing the indorsement on the ballots is somewhat confused, as is readily seen by reading section 488; but by transposing the expression "and to what place," so that it shall follow the clause containing the words "For removal," the express declaration of the statute is made plain, and lays down the rule that the

47

voters in favor of the removal must indorse on their ballots "For removal," and "to what place" the removal shall be made. And this is the construction given to the section of the Code in the case of *Wells* v. *Ragsdale,* 102 *Ga.* 53 (29 S. E. 165), where it is said: "The meaning and intention of this provision of the act is not complied with by a simple indorsement upon the ballot of the voter 'for removal.' It must go further and express the wishes of the voter as to the place to which the county-site shall be removed; and unless such expression is made, such vote can not be counted for removal." And that it was not the intention that the choice of the voters at such election should be limited to one particular place is shown by the further provision in this section, that "if two thirds of the votes cast at said election are in favor of removal to any one particular place, the General Assembly next convening after said election may provide for the removal of said county-site by appropriate legislation." Counsel representing the defendants in the first case insist that even if it was the purpose of the legislature, in elections like this, to submit merely the question of the removal of the existing county-site, without limiting the choice of the voters between that place and some designated place, as was done in the present instance, nevertheless a call for an election to determine whether there should be a removal of the existing county-site to a place designated in the order is not invalid, as the voters would be at liberty to indorse upon their ballots the place to which the county-site should be removed. We can not agree with this contention. We think it is clear that it was the intention of the General Assembly, in elections like this, that those voters who were in favor of a removal should have free choice between the actual county-site and the one to which they desired a change to be made. They have the right under the statute to express an unrestricted choice, and the call of an election in which they should have the right to express this choice should not be misleading. The duty should not be imposed upon the voter to construe the statute conferring the right to make a choice and decide that he has a right to make a choice not indicated in the order calling the election. In State ex rel. *v.* County Commissioners, 22 Fla. 29, it is said: "It is clear that the election prayed for and ordered, and given notice of, was one as to whether Sanderson should continue to be the county-site, or the county-site should be changed or removed to

McClenny. The statute provides that the place receiving a majority of the number of votes cast at such election shall be the county-site 'for ten years.' The purpose of the statute is that when an election is held under it the several voters of the county shall have the right to vote for any place in the county they may respectively deem the best place for the county site. The election to be ordered is ' for the location of the county-site ' of the county, and not merely whether it shall be removed to a named particular place or remain where it is. No such limited issue is to be submitted to the people. It is not contemplated that any voter shall be restricted, either by the petitioning voters or by the county commissioners, to voting for one of any two or more particular places, and any election in which such restriction is made is entirely contrary to the spirit and purpose of the act. It is clear that no election has been ordered which called for an expression from the voters of Baker county of their choice as to which, of all points, place or localities in it, the county-site should be changed to. It will not do to say that the voters could have voted for any place other than Sanderson or McClenny. No such election was called, and it can not be assumed that it was understood by the electors to be any election other than as between Sanderson and McClenny. It is a fact that in the case of Lanier v. Padgett, 18 Fla. 842, an election was held, and Sumterville received a majority of the votes over Leesburg, the then existing county-site, and no fraud was alleged in the election; yet as the petition did not ask a change of location, the election was declared to be illegal, and this, too, although it appears that the order was for an election *locating the county-site* as contemplated by the statute. In State ex rel. v. County Commissioners, 19 Fla. 531, it appears that a large vote was polled at this election. The doctrine of these cases is that the provisions of the act in question should be strictly observed. 19 Fla. 532, 533. When an election of this kind is to be held, fairness, and a proper enforcement of the law, require that nothing should be permitted so fully calculated to mislead the electors as to their rights, or in such patent antagonism to the true spirit of the law." And this reasoning of the court seems to us to be sound and conclusive. And hence we conclude that the election sought to be enjoined was not such an election as is contemplated and provided for in the statutes under consideration, relating to elections upon the issue as to whether there shall be a

removal of a county-site. The preliminary and essential steps to the holding of such an election in this case were not complied with, because the order for the election was not such as contemplated by the statute; and we can reach no other conclusion than that, so far as it affected the question of removal, the election was illegal and void.

2. And under the questions made by the pleadings we must now decide whether or not a court of equity would interfere by injunction to prevent the consolidation of the vote and the declaration of the result of the election. This court has more than once adverted to the general principle, that a court of equity ordinarily will not interfere with the holding of an election, by virtue of the exercise of the political power, for the determination of issues and matters submitted to popular vote under the provisions of the constitution and the laws passed in pursuance thereof. But there are exceptions to this general principle. The case of *Mayor etc. of Americus* v. *Perry,* 114 *Ga.* 871 (40 S. E. 1004, 57 L. R. A. 230), was one in which an application was made by the chairman and members of the board of police commissioners of the municipality, and by citizens and taxpayers of the city on behalf of themselves and other citizens and taxpayers, to enjoin the mayor and council of the municipality and others from carrying into effect certain ordinances adopted by the mayor and council, which, if void, had the effect of abolishing the board of police commissioners and the office of chief of police. One of the questions raised was whether a court of equity would intervene in such a case and enjoin an election under an ordinance which the petitioners claimed was invalid. The contention was made in the case by demurrer, that a court of equity would not interfere in a matter of this character; and this court said: " The ordinances, so far as they attempt to abolish the board of police commissioners and to deprive it of the powers which the charter conferred upon it, are ultra vires and void, and there is nothing in the petition to show that the board of police commissioners is either failing or refusing to exercise the powers confided to it by the General Assembly. On the other hand it appears, not only from the petition but from the answer itself, that the board is attempting to exercise those very powers and would exercise them but for the obstructions placed in its way by the mayor and council. Under such circumstances the mayor and council have no authority

whatever to elect a police force, and the election of such officers would bring about the question as to whether the persons so elected were entitled to demand compensation from the city; and while, under the view we have taken of the case, such persons would have no right to receive compensation, the fact that they were elected and were attempting to discharge the duties of the offices for which they were chosen would result either in the money in the city treasury being illegally used in paying their claims, or in requiring the money of the municipality to be used in defeating their claims for compensation; and to prevent this any taxpayer would have a right to appeal to a court of equity to enjoin the mayor and council from proceeding further to do any act which would have the effect to bring about either result. The plaintiffs bring their petition, not only as members of the board of police commissioners, but also in their capacity of citizens and taxpayers; and in this latter capacity they are entitled to be heard, the case being one where the municipal authorities are going beyond their powers and doing acts which, if carried into effect, would either result in a misappropriation of public funds or entail upon the taxpayers of the city the expense of litigating with persons who might hold claims against the city under the invalid ordinances." And in the case of *Mayor etc. of Macon* v. *Hughes,* 110 *Ga.* 795 (36 S. E. 247), it was said: " It is contended that the court below was without jurisdiction to grant the injunction prayed for, for the reason that a court of equity will not enjoin the holding of an election, which is a political and ministerial function, and consequently not controllable by the courts. The general rule undoubtedly is that courts of equity will not interfere in matters of elections. To say that this rule is without exception seems to be purely arbitrary. Why should not such an election as the one now under consideration be enjoined? It is not an election in which a public office is involved, the right to hold which may be easily and effectually tested by the writ of quo warranto, but it is an election to determine whether or not given territory shall be annexed to the City of Macon. The city authorities have no power to call the election, their ordinance attempting to do so is absolutely void, and any election held thereunder would be likewise void. Some of the petitioners are residents and taxpayers of the City of Macon, and they predicate their right to the injunction on the ground that illegal expenses will be incurred by

reason of the election, of which expenses they will be required to bear their proportionate part. This was a sufficient ground for the granting of the injunction at their instance." See also *Wells* v. *Ragsdale,* supra. The present case under its facts should be excepted from the general rule that courts of equity will not interfere with elections. Nor are we concluded upon this point by the case of *Vornberg* v. *Dunn,* 143 *Ga.* 111 (84 S. E. 370). It is true that in that case it appeared that the election held was for a change of the county-site to a designated place, and it was claimed that the voters were thereby prohibited from exercising their unrestricted choice as to the place of their preference. But the petition in the case was filed to enjoin the collection of a tax after the legislature had acted in accordance with the provision of the constitution and after it had enacted that the county-site of Murray County be removed from Spring Place to Chatsworth; and the court did not decide in that case nor pass upon the question of whether or not the declaration of the result of the election should be enjoined, where the election was void and failed to comply with the statute in such cases provided. In the present case steps were taken to enjoin the declaration of the result of the election before that election became a part of or in any way interwoven with a legislative enactment; and in that respect it differs essentially and fundamentally from the case of *Gaskins* v. *Dorsey,* 150 *Ga.* 638 (104 S. E. 433). The decision in that case dealt with a petition for injunction which sought to restrain the publication of a certain proclamation by the Governor, authorizing the qualified voters of the State of Georgia to vote upon a certain proposal of the General Assembly of Georgia to amend the constitution of the State so as to create a new county, and further to enjoin the Governor from placing upon the official ballots for the election to be held any provision for the ratification or rejection of the proposed amendment to the constitution, and also to enjoin the Secretary of State from proclaiming the result of any election upon the ratification of the proposed amendment. And this court held that the trial court did not err in refusing to grant the injunction, because, considering the steps necessarily taken in the course of legislation and submission of the proposed amendment to the people, an amendment to the constitution is in its formative stages until the electorate of the State have cast their ballots thereon in a general election; that

while the amendment is in such formative state and in the course of progression from the proposal to the general election and ratification, it is analogous to ordinary legislation by the General Assembly, which is in its formative state or state of progression from the time of the introduction of a bill until it is finally passed by the requisite constitutional majority and has received the signature of the Governor; that the judical power will not be exerted, by writ of error or otherwise, to stay the course of legislation while it is in process of enactment; and that this principle is applicable both to ordinary legislation and the analogous course of an amendment to the constitution from the time of the introduction of the act proposing the amendment until the electors have acted. It will be readily seen that there is a fundamental difference between the case of *Gaskins* v. *Dorsey,* supra, and the present case. The election in the present case, while it might become the basis of action by the General Assembly, had in no way become a part of the legislative enactment, but the petitioners acted promptly and attacked the election in limine. And though the election was held at the time and places specified in the order, no injunction having been granted to restrain the election, the court should have granted the injunction prayed against the consolidation of the votes and the declaration of the result, and the refusal of the injunction to restrain the declaration of the result was error.

It necessarily follows from what we have said, that the court should not have granted the mandamus requiring the superintendents of the election to declare the result.

*Judgment reversed in the first two cases, and affirmed in the third. All the Justices concur.*