20971. KEMP v. MITCHELL COUNTY DEMOCRATIC EXECUTIVE COMMITTEE *et al.*

20972. KEMP v. MITCHELL COUNTY DEMOCRATIC EXECUTIVE COMMITTEE *et al.*

20973. KEMP v. MITCHELL COUNTY DEMOCRATIC EXECUTIVE COMMITTEE *et al.*

ARGUED JULY 11, 1960—DECIDED SEPTEMBER 8, 1960.

*Cain & Smith, Geo. T. Smith,* for plaintiffs in error.

*Perry, Walters & Langstaff, Fred B. Hand, Jr.,* contra.

HEAD, Presiding Justice. ■ We consider first the injunction cases. There is no material dispute between the parties on the facts in these cases. Under the allegations in the petitions, admissions in the defendants' answers, and stipulations of facts, it appears that U. A. Kemp, Jr., made every reasonable effort prior to the primary to induce the defendants to allow only the voters qualified to vote for county superintendent of schools to vote in the primary for such officer. The defendants made no effort to comply with the law, but encouraged all voters in the county' to vote in the primary for a nominee for all county offices. Both petitioners were refused the right to challenge the eligibility of the voters in the independent school district to vote for superintendent when they asserted such right of challenge at the voting precinct.

By amendment to Art. XI, Sec. II, Par. I of the Constitution of 1877 (*Code* § 2-8301), duly ratified on November 3, 1914, and to become effective January 1, 1917, it was provided in part: "The county officers shall be elected by the qualified voters of their respective counties, or districts, and shall hold their offices for four years." This amendment to the Constitution of 1877 is incorporated in the Constitution of 1945 as Art. XI, Sec. II, Par. I (*Code* § 2-7901). The Constitution of 1945, Art. VIII, Sec. V, Par. I (*Code* § 2-6801), provides in part: "Each county, exclusive of any independent school system now in existence in a county, shall compose one school district and shall be confined to the control and management of a County Board of Education." Art. VIII, Sec. VI, Par. I of the Constitution of 1945 (*Code* § 2-6901) provides as follows: "There shall be a County School Superintendent, who shall be the executive officer of the County Board of Education." Under the above quoted provisions of the Constitution, the office of county school superintendent is a constitutional office. The superintendent is to be elected by the voters of his district, his district being the county of his residence exclusive of any independent school system in existence in such county.

Subsequently to the amendment to the Constitution of 1877, approved and to become effective January 1, 1917, the General Assembly enacted a "Code of School Laws," approved August 19, 1919 (Ga. L. 1919, pp. 288-363). It is provided in § 147 of this act, in part, that where there is in a county "one or more independent school systems not under the supervision of the County Superintendent, the voters of such independent system or systems shall not vote in the election for the County Superintendent." The validity of this enactment by the General Assembly was called in question in *Bower v. Avery,* 172 Ga. 272 (158 S. E. 10), where this court restated its ruling on the former appearance of the case (*Avery v. Bower,* 170 Ga. 202, 206, 152 S. E. 239), to the effect that: "Since voters in the independent school district . .. . under the statute, can not vote in an election for county school superintendent (Ga. L. 1919, p. 349, § 147), it necessarily follows that the defendant [Bower], under the allegation, is not a qualified voter entitled to vote, and for that reason he is not eligible to hold the office in question [county school superintendent]." In *Bower v. Avery,* supra, a number of constitutional attacks were made on the provision of the law to the effect that a voter in an independent school district can not vote for the election of a county superintendent of schools. The act was held to be constitutional against all attacks made on it, and the judgment of the trial court in a quo warranto proceeding, holding that Bower was ineligible to hold the office of county school superintendent, was affirmed.

In *Olliff v. Hendrix,* 172 Ga. 497 (158 S. E. 11), another case involving the question as to whether a resident of an independent school district could hold the office of county school superintendent, additional constitutional attacks were made on § 147 of the act of 1919, providing that residents of an independent school district can not vote in the election for county school superintendent, and it was there held that § 147 of the Code of School Laws was not void on the ground that no provision was made for a separate registration or a separate voters' list for those qualified to vote in the district wherein independent school systems are located. The constitutionality of § 147 of the Code of School Laws was reaffirmed by this court

in *Phillips v. Rozar*, 172 Ga. 862 (159 S. E. 245), which was another proceeding by quo warranto involving the office of county school superintendent.

The three cases hereinabove referred to were decided in 1931 prior to the convening of the General Assembly. By an act approved August 27, 1931, it was provided that a citizen of a county for two years shall be eligible to be elected or appointed as county school superintendent "even though said person should not reside in that part of the county which is under the supervision of the county superintendent of schools and ineligible to vote in the election for such superintendent of schools." Ga. L. 1931, pp. 126-127. By an act approved August 28, 1931, entitled, "County' School Superintendent's Election; Voters," (Ga. L. 1931, pp. 124-126) the act of 1919, § 147, was amended as follows: "Provided, if there is in this county one or more independent school systems not under the supervision of the county superintendent, the voters of such independent system or systems shall not vote in any *primary* or election for the county superintendent." (Italics ours.) Section 147 of the Code of School Laws of 1919, as amended by the act of 1931 (Ga. L. 1931, pp. 124-126) is included in the official Code of Georgia as § 32-1002.

The provisions of the Primary Recount Law approved March 27, 1941 (Ga. L. 1941, pp. 432-439; *Code Ann.* § 34-3223 et seq.) were not available to the petitioner U. A. Kemp, Jr., since it is provided in § 3 of that act, as to county officers, that only candidates who received $33\frac{1}{3}\%$ of the votes cast as determined by' the first count or canvass may avail themselves of the provisions of that act. There is no other statute whereby the petitioner might seek redress in a court of law for the wrongs committed.

"Equity, by a writ of injunction, may restrain proceedings in another or the same court, or a threatened or existing tort, or any other act of a private individual or corporation which is illegal or contrary to equity and good conscience and for which no adequate remedy is provided at law." *Code* § 55-101.

The question now before this court is whether the petitioners, under the prohibition against voters of an independent school

district voting in any primary or election for county school superintendent, might obtain relief in a court of equity under the facts alleged. Primarily, the petition of U. A. Kemp, Jr., as originally filed, was an action to enjoin the Democratic Executive Committee from permitting voters prohibited by law from voting in a primary election for county superintendent of schools to vote for such superintendent. It has been held by this court that injunction is the proper remedy to prevent a board of registrars from illegally and unlawfully removing voters' names from the registration list. See *Padrosa v. Amos,* 175 Ga. 413 (165 S. E. 248); *Geer v. Dozier,* 175 Ga. 865 (166 S. E. 433). The voters in the Pelham Independent School District were not qualified to vote in any primary or election for county school superintendent, nor could they so qualify, or become qualified, by reason of the fact that their names may have appeared on the general list of registered voters. As heretofore pointed out, it was ruled in *Olliff v. Hendrix,* 172 Ga. 497, supra, that the disqualification of such voters to participate in an election for county school superintendent was not ineffective by reason of the fact that the law makes no provision for a separate registration list in independent school districts. Under the prohibition against voters in an independent school district voting in any primary election for the office of county superintendent of schools, and under the facts alleged by U. A. Kemp, Jr., the trial judge should have restrained the executive committee from permitting disqualified voters to vote in the primary. This the trial judge refused to do, and subsequently the petition was amended, attacking the election by reason of the participation therein of disqualified voters residing in the Pelham Independent School District in such number as to change the results of the election.

Counsel for the defendants take the position that these cases involve solely a political question, and in their brief they quote from *Printup v. Adkins,* 150 Ga. 347(1) (103 S. E. 843), as follows: "Elections belong to the political branch of the government, and courts of equity will not interfere to protect a purely political right." In support of this quotation they cite *Davis v. City Council of Dawson,* 90 Ga. 817 (17 S. E. 110); *Tupper v.*

*Dart,* 104 Ga. 179 (30 S. E. 624); *Ogburn v. Elmore,* 121 Ga. 72 (48 S. E. 702); *Avery v. Hale,* 167 Ga. 252 (145 S. E. 76); *Sibley v. Park,* 175 Ga. 846 (166 S. E. 212); *Bullard v. Culpepper,* 190 Ga. 848 (11 S. E. 2d 19); and *Altman v. Cooper* 212 Ga. 627 (94 S. E. 2d 685).

The cases of *Davis v. City Council of Dawson,* supra, and *Tupper v. Dart,* supra, do not support the rule counsel for the defendants contend should be applied. In the *Davis* case injunction was denied because quo warranto was the proper remedy. *Tupper v. Dart,* supra, did not involve injunction, but prohibition, which the court held was not the proper remedy. A number of distinctions exist between the other cases cited and relied on by counsel for the defendants and the present cases. In the first place, all of the cases cited by counsel for the defendants, and other similar cases which could have been cited, such as *Harris v. Sheffield,* 128 Ga. 299 (57 S. E. 305), and *Cartledge v. City Council of Augusta,* 189 Ga. 267 (5 S. E. 2d 661), were filed after the election was held and no relief against the threatened wrongs of the defendants under positive statutory prohibition was invoked prior to the election, as in the present case; and in none of the cases cited by counsel, or others herein referred to, were facts alleged to show that voters prohibited by a valid statute from voting actually voted in such numbers as to make it impossible to determine which candidate received a majority of the legal votes cast.

The rule contended for by counsel for the defendants is a valid rule in this State, and when the allegations of a petition are such as to invoke the rule, it will be applied. The exception to the rule urged by counsel for the defendants is applicable in the present case, since as to the voters residing in the Pelham Independent School District not only was the committee without authority to call or hold a primary election for county school superintendent, but was actually prohibited by law from so doing.

It has long been the rule in this State that where there is no authority to hold the election, or where statutory requirements pertaining to the holding of an election are not complied with, the election is void, and injunction is a proper remedy. *Mayor*

&c. of Macon v. Hughes, 110 Ga. 795 (36 S. E. 247); Mayor &c. of Americus v. Perry, 114 Ga. 871 (40 S. E. 1004); Town of Roswell v. Ezzard, 128 Ga. 43 (57 S. E. 114); Town of Maysville v. Smith, 132 Ga. 316 (64 S. E. 131); County of DeKalb v. City of Atlanta, 132 Ga. 727(6) (65 S. E. 72); Tolbert v. Long, 134 Ga. 292 (67 S. E. 826, 137 Am. St. Rep. 222); Cheney v. Ragan, 151 Ga. 735 (108 S. E. 30); Marbut v. Hollingshead, 172 Ga. 531 (158 S. E. 28); Moon v. Seymour, 182 Ga. 702 (186 S. E. 744); Barrentine v. Griner, 205 Ga. 830 (55 S. E. 2d 536); Williams v. Cox, 214 Ga. 354 (104 S. E. 2d 899).

In Moon v. Seymour, supra, it was held by this court that the requirements of the statute pertaining to the furnishing of booths or enclosures for persons qualified to vote at the various polling places (Code § 34-1902) are mandatory, and it was there said: "But where there is a total disregard of the statute, it can not be treated as an irregularity, but it must be held and adjudicated to be cause for declaring the election void and illegal." In Moon v. Seymour, supra, there was no attempt to show, and indeed it could not be shown, that the results of the election were changed by failure to comply with the commands of the statute. In the present case the results of the election were changed in such a manner that it is impossible to determine who actually received the highest number of the qualified votes cast for county school superintendent.

This court has no power to modify, amend, or repeal a valid constitutional statute enacted by the General Assembly of this State. Barnes v. Carter, 120 Ga. 895 (48 S. E. 387). Nor will this court concern itself with the wisdom of a legislative enactment. Sirota v. Kay Homes, Inc., 208 Ga. 113 (65 S. E. 2d 597). It is the duty of this court to give effect to the law as it exists. Applying the prohibition of the law to the facts of this case, the primary election for County Superintendent of Schools in Mitchell County was ultra vires, illegal, and void.

■ The mandamus petition sought to compel the Democratic Executive Committee of Mitchell County to reconvene and recanvass the returns and to declare the successful candidate for superintendent, excluding from the returns all votes cast in the Pelham Independent School District; and if the votes cast by

those disqualified to vote can not be separated from the legal votes, that they exclude from the canvass the votes cast in the Pelham Voting Precinct, and declare Kemp the successful candidate for the office of Superintendent of Schools for Mitchell County.

The only provision of our law for contesting a primary election is the Primary Recount Law (Ga. L. 1941, pp. 432-439; *Code Ann.* § 34-3223 et seq.), and no duty is imposed by law on the County Democratic Executive Committee to recanvass or recount the votes in a primary election. "To entitle one to the writ of mandamus, it must appear from the petition therefor that the applicant has a clear legal right to have performed the particular act which he seeks to have enforced." *Trussell v. Martin,* 207 Ga. 553, 556 (63 S. E. 2d 361), and cases cited; *City of Decatur v. Fountain,* 214 Ga. 225 (104 S. E. 2d 117). Compare *Clark v. Colquitt County Democratic Executive Committee,* 158 Ga. 642 (124 S. E. 40).

*Judgments reversed in cases Nos. 20971 and 20972. Judgment affirmed in case No. 20973. All the Justices concur.*