### 3610.  IRVIN *v.* THE STATE.

1. Where one intentionally pointed and aimed a pistol at another, in violation of section 349 of the Penal Code of 1910, and, believing that the pistol was unloaded, pulled the trigger, and the pistol unexpectedly exploded, causing the death of the person at whom it was pointed, a verdict of involuntary manslaughter in the commission of an unlawful act was authorized.

2. The excerpt from the charge of the court is not justly subject to the criticism that it was in violation of section 4863 of the Civil Code of 1910 (Penal Code, § 1058).

DECIDED OCTOBER 23, 1911.

Conviction of involuntary manslaughter; from Burke superior court—Judge H. C. Hammond. June 24, 1911.

*C. B. Garlick,* for plaintiff in error.

*J. S. Reynolds, solicitor-general, John M. Graham,* contra.

HILL, C. J. On an indictment for murder the plaintiff in error was convicted of involuntary manslaughter in the commission of an unlawful act; and the judge overruled his motion for a new trial. The record raises only two questions. (1) Is there any evidence in support of the finding that the homicide was involuntary in the commission of an unlawful act? (2) Did the trial

judge, in a certain instruction to the jury complained of, express or intimate any opinion as to what had been proved?

1.   A brief statement of the facts will elucidate the first proposition.   According to the evidence of the State's witnesses, the killing was the result of an unlawful act, to wit, intentionally pointing a pistol at the person killed.   Penal Code (1910), § 349.   Under the evidence the jury were fully authorized to find that when the accused pointed the pistol at the decedent he did not know it was loaded.   It seems that just previous to the homicide the accused had fired his pistol several times in the yard of the house where the homicide took place, and thought he had shot every cartridge. After shooting his pistol he went into the house and began a playful scuffle with the decedent, a young girl.   During the scuffle he playfully pointed the pistol at the girl, snapping it several times, until, reaching a loaded cartridge still remaining in the pistol, it fired; the ball going through her body, killing her almost instantly. There was no manifestation of temper or ill will between the two. It appears simply to have been a frolic between them, without any intention on the part of the accused to injure the girl in any manner.   According to the witnesses for the accused, and the statement of the accused, the pistol was discharged accidentally, while he and the girl were engaged in a playful struggle for its possession.   The girl, when shot, called out: "Oh, Len; you have shot me!"   And the accused exclaimed: "Oh, I would not have shot you for anything in the world!"   He ran out to hitch a mule to a buggy to go for a doctor, and, on being told that the girl was dead, "turned a nail keg upside down, and sat there until 2 or 3 o'clock in the afternoon."

It will thus be seen that the evidence was in conflict as to how the decedent was shot.   Did the accused point the pistol at her and snap it several times, until it fired and killed her?   Or did the two playfully struggle for its possession, and did it go off accidentally, there being nothing to show which one had pulled the trigger?   If the first, the case was one of involuntary manslaughter; if the second, an accidental killing by misadventure.   The jury were the exclusive arbiters of this issue, and they decided that it was involuntary manslaughter in the commission of an unlawful act.   The question of law arises: . Where one points a pistol at another, in violation of section 349 of the Penal Code of 1910, and, thinking that it

is not loaded, pulls the trigger, and the pistol unexpectedly explodes, killing the person at whom it is pointed, is the act of homicide thus caused involuntary manslaughter in the commission of an unlawful act? We see only one answer to this question. Section 349 of the Penal Code expressly declares that "any person who shall intentionally point or aim a gun or pistol, whether loaded or unloaded, at another, not in a sham battle by the military, and not in self-defense or in defense of habitation, property, or person, or other instances standing upon like footing of reason and justice, shall be guilty of a misdemeanor." Under this statute the accused was guilty of the unlawful act of intentionally pointing a pistol at the girl, although he believed it was unloaded at the time. But, as he did not intend to kill her, the homicide was involuntary, and therefore his offense, under the law, was involuntary manslaughter in the commission of an unlawful act. The very purpose of the statute just quoted is to protect life and limb from the reckless and careless pointing of guns or pistols at another; and, in view of the many unintentional homicides from such conduct, the statute in question would seem to be a wise one. A case clearly analogous to the one under consideration is that of *Cook* v. *State, 93 Ga.* 200 (18 S. E. 823). The trial judge very properly submitted to the jury the law of involuntary manslaughter in the commission of an unlawful act, and, as illustrating the question, gave in charge section 349 of the Penal Code.

2. The following excerpt from the charge is excepted to on the ground that it was an expression of an opinion that certain facts which were contested had been proved: "Gentlemen of the jury, you are not only to find and determine in the case the physical facts that force put in motion by the defendant, namely, the pulling of a trigger of a pistol and sending a ball into the body of the deceased, causing her death—not only that physical fact is to be determined by you, but also the intention, the purpose, the motive, the heart, the spirit with which the defendant acted when he committed the deed are for your consideration and determination." It is insisted that this was telling the jury that the defendant pulled the trigger and sent a bullet into the body of the decedent, thereby causing her death, and that this was the vital question at issue; the accused denying that he either pointed the pistol at the girl or pulled the trigger, and contending that the pistol was ac-

cidentally discharged in the struggle for its possession, not by him, but by the girl herself. We do not think this criticism is well founded. The judge had just stated the contentions of both the prosecution and the defense, and then he told them in this instruction that they must "*find* and *determine*," first, the physical facts; and, secondly, the intention with which these facts were put in motion.

The meaning of the word "determine" is to "find out or ascertain the truth" about an occurrence. If the judge meant to state that the physical facts he mentioned were proved, then these facts were not to be "found and determined" by the jury. In other words, the language expressly refutes the construction attempted to be given to it, for it leaves to the "*consideration* and *determination*" of the jury the existence of both fact and intention.

*Judgment affirmed.*