## GASKINS *et al. v.* DORSEY, Governor, *et al.*

The judicial power will not be exerted to stay the course of legislation while it is in process of enactment; and this principle is applicable both to ordinary legislation and to the analogous course of an amendment of the constitution from the time of the introduction of the act proposing the amendment until the electors have acted.

No. 2248.  OCTOBER 26, 1920.

Petition for injunction.  Before Judge Humphries.  Fulton superior court.  September 14, 1920.

*R. A. Hendricks, W. D. Buie, J. A. Alexander,* and *Bryan & Middlebrooks,* for plaintiffs. ·

*Brewster, Howell & Heyman, Mark Bolding, J. P. Knight,* and *E. B. Rivers,* for defendants.

BECK, P. J.  Certain citizens and taxpayers of Berrien County, Georgia, on September 1, 1920, filed a petition in the superior court of Fulton County, against Hon. Hugh M. Dorsey, Governor of the State of Georgia, the Superintendent of Public Printing of the State, and the Secretary of State, praying that the Governor be restrained and enjoined from causing the publication of a certain proclamation authorizing the qualified voters of the State of Georgia to vote upon a certain proposal of the General Assembly of Georgia to amend the constitution of Georgia so as to create a new county to be known as Lanier County, and that the Governor be enjoined from placing or causing to be placed upon the official ballots for the election to be held on the first Tuesday in November, 1920, any provision for the ratification or rejection of the said proposed amendment to the constitution creating Lanier County.  Petitioners also sought to enjoin the Superintendent of Public Printing from publishing the said proclamation, and to enjoin the Secretary of State from proclaiming the result of any election upon the ratification of the said proposal to amend the constitution of the State of Georgia

so as to create the County of Lanier. In the petition it is alleged that the act of the General Assembly containing the proposal to amend the constitution was unconstitutional and void because of certain defects and irregularities. At the interlocutory hearing, after considering the petition and evidence submitted, the court refused the injunction prayed.

The court did not err in refusing to grant the injunction prayed for. The provision of the constitution relating to amendment of that instrument provides that any amendment may be proposed in the Senate or House of Representatives, and that the same shall be agreed to by two thirds of the members elected to each of the two houses; the proposed amendment shall be entered on the journals, with the yeas and nays taken thereon; and the General Assembly shall also provide for a submission of the proposed amendment to the people at the next general election; and where the people in such general election ratify the amendment by a majority of the electors qualified to vote for the members of the General Assembly, voting thereon, such amendment shall become a part of the constitution of the State. Considering the steps necessarily taken in the course of legislation and submission of the proposed amendment to the people, an amendment to the constitution is in its formative stages until the electorate of the State have cast their ballots thereon in a general election. While the amendment is in such formative state and in the course of progression from the proposal to the general election and ratification, it is analogous to ordinary legislation by the General Assembly, which is in its formative state or state of progression from the time of the introduction of a bill in the legislature until it is finally passed by the requisite constitutional majority and has received the signature of the Governor. The judicial power will not be exerted, by writ of error or otherwise, to stay the course of legislation while it is in process of enactment. This applies both to ordinary legislation and the analogous course of an amendment to the constitution from the time of the introduction of the act proposing the amendment until the electors have acted. "It would be a stretch of power in the judiciary to restrain by its process, mesne or final, a law enacted by the General Assembly, in a formative state and before it became operative by the vote of the people to be affected thereby, which

vote alone could consummate its validity, under the terms of the act itself." *Clayton* v. *Calhoun,* 76 *Ga.* 270. See also Dubuisson *v.* Board of Supervisors, 123 La. 443 (49 So. 15); People *v.* Mills, 30 Colo. 262 (70 Pac. 322); State *v.* Thorson, 33 L. R. A. 582 (9 S. D. 149, 68 N. W. 202). The case at bar differs from the case of *Tolbert* v. *Long,* 134 *Ga.* 292 (67 S. E. 826, 137 Am. St. R. 222), and other like cases, where the election which it was sought to enjoin was not legislative in character. See *County of DeKalb* v. *Atlanta,* 132 *Ga.* 727 (8) (65 S. E. 72).

*Judgment affirmed. All the Justices concur.*