## SMITH *et al. v.* BOARD OF EDUCATION OF WALTON COUNTY *et al.*

736

No. 8661. April 16, 1932.

*I. L. Oakes, Orrin Roberts,* and *J. M. Roberts,* for plaintiffs.
*Henry H. West,* for defendants.

HINES, J.   Smith and others, as citizens, taxpayers, and patrons of the Walker Bennett school district of Walton County, in their own behalf and in behalf of others similarly situated, filed their petition against the Board of Education of said county, in which they made this case:   The board consolidated the Loganville and Walker Bennett school districts in that county.   More than one fourth of the patrons of the Walker Bennett school district, being more than ten of the patrons of said district school, objected to the consolidation.   Thereupon an election was duly ordered, and the same was held to determine whether or not said two districts should be consolidated.   The registrars of the county furnished a list of the qualified registered voters in said school districts for the purpose of holding said election.   Said list contained 258 names.   At the election 126 votes were cast favoring the consolidation, and 81 votes were cast against consolidation, the votes cast in favor of consolidation being less than a majority of the qualified voters of said districts as furnished by the registrars as the legally qualified voters entitled to vote.   The board has given notice to the patrons of said school, who objected to said consolidation, that it intends to purge the list of registered voters as furnished by the registrars, and reduce the number of registered voters in said districts so as to make the same less than 258, in order to enable the board, if it can, to declare that a majority of the qualified voters of said districts voted in favor of consolidation.   The board will do so unless enjoined.   Under section 92 of the code of school laws, the board is the tribunal fixed by law to determine and declare the result of the election.   There is no provision made for a contest or appeal, and

petitioners are without remedy at law. Under the law the registrars of the county are the duly constituted authorities to make up the list of qualified voters for said election, which they did, and the board is bound by this list as made up, and has no legal right to revise or change said list; and where less than a majority of the qualified voters, according to said list, voted in favor of consolidation, the board has no alternative but to declare the result against consolidation. Petitioners pray that the board of education be enjoined from changing, altering, or reducing the list of registered voters as furnished by the registrars, and from declaring the consolidation of said districts under said election; that pending a hearing the said board and the members thereof be enjoined from any and all further proceedings in the matter of the consolidation of said districts; and that after a hearing the board be permanently enjoined.

The board filed its answer in which it admitted the substantial allegations of the petition, except as hereinafter stated. It alleged that for want of sufficient information it was unable to say whether. or not the votes cast were a majority of the qualified voters. It admitted that it had given notice to all parties at interest that a hearing would be had to determine whether or not a majority of the qualified voters cast their votes in favor of consolidation. It alleged that it could not state whether or not, by purging the list, the number of voters would be reduced to less than a majority, or would constitute more than a majority. It denied that it was bound by the list of registered voters furnished by the registrars, and insisted that under the statute it is the duty of the board to declare and determine the result of the election, and that under this statute it had the right to purge such list in determining said result, and to strike from said list the name of any person who at the time of the election was dead or disqualified, and to add thereto the name of any person who was a qualified voter and whose name was omitted therefrom; and that it was its duty to hear evidence and to determine and declare whether or not those votes cast in favor of consolidation constituted a majority of the qualified voters of said districts. It was further alleged that it had been called to the board's attention that the list of registered voters used in said election as furnished by the registrars contained the names of persons who were dead, who did not live in the districts, and who

were otherwise disqualified; that a petition had been filed with it, asking that said names be stricken from said list in determining the result of said election; that in its opinion it was its duty and within its authority to hear evidence to determine whether or not said persons were qualified voters; that it had a right to strike from said list any disqualified person and add thereto any qualified person; and that after doing so, it was its duty to determine whether or not the votes legally cast were a majority of the qualified voters of the districts.

Both the petition and the answer were verified. The case was submitted to the trial judge for determination on the pleadings. The judge refused to grant a temporary injunction, and to this judgment the plaintiffs excepted.

■ The first matter for our consideration in this case is, what function does the board of education of a county perform in determining the result of an election held under section 92 of the code of school laws upon the proposition to consolidate two school districts? Is its function confined merely to an examination of the returns of the election managers, and to a declaration of the result as it appears from the face of the returns; or does section 92 authorize the board to hear evidence upon the question whether a majority of the qualified voters of the districts which it is sought to consolidate have voted in favor of their consolidation, and then declare the result of the election in accordance with its finding upon this question? Counsel for the complainants insist that the qualified voters in the districts must be ascertained alone from the list of such voters furnished by the county registrars to the managers of the election for their guidance in permitting persons to vote at said election; and that the board of education can not hear any evidence outside of said list in determining whether a majority of the qualified voters voted in favor of the consolidation of the districts. The contrary view is urged by counsel for the respondents. This issue of law makes it incumbent upon us to construe the above section of the code of school laws. Under this section the county board of education is empowered to consolidate two or more school districts. The exercise of this power can be overriden by the vote of a majority of the qualified voters of the districts affected, in the manner provided in said section. If as many as one fourth of the patrons of a school or schools in these districts object to

the consolidation, said one fourth of the patrons consisting of at least ten, it is the duty of the county superintendent to call an election upon the question of such consolidation; and if at such election a majority of the qualified voters vote for consolidation, the districts shall be consolidated, otherwise they shall·not be consolidated. This section then provides that "The result of such election shall be determined and declared by the board of education, and the same shall be held as other elections are held." Acts 1919, p. 326; 8 Park's Code, § 1437(q).

This brings us to consider and construe the language in said section that "The result of such election shall be determined and declared by the board of education." Under this law two or more school districts can be consolidated only by "a majority of the qualified voters" of the districts, voting for consolidation. How is this to be determined? The statute expressly declares that it is to be determined by the board of education. The duty is put upon the county board of education to determine whether a majority of the qualified voters of the districts voted in favor of consolidation at such election. This does not mean that the county board of education is simply to examine the returns of the election, count the number of votes cast for consolidation, and declare from the face of the returns whether a majority voted for·consolidation or not. This would put too narrow a construction upon this language of this section. To determine has been defined to mean to adjudge, to come to a decision, to decide upon after investigation, to ascertain the truth about a transaction, to perform a judicial act, to settle by judicial sentence and to try and put an end to. *Irvin* v. *State,* 9 *Ga. App.* 865, 868 (72 S. E. 440); 18 C. J. 984. So we are of the opinion that the board of education had authority, upon issue made, to determine whether a majority of the qualified voters of these districts had voted for consolidation, notwithstanding the fact that the returns of the election showed a different result.

■ This brings us to consider what proof would authorize the board of education to find that a majority of the qualified voters of these districts had voted for the consolidation. ·In the first place, it would take a vote of a majority of all the registered qualified voters of both districts in favor of consolidation, to authorize the board to declare the consolidation in effect. A vote of a majority of the registered qualified voters voting at the elec-

tion would not be sufficient to effect the consolidation. To effect such consolidation, a majority of all the registered qualified voters of both districts must vote therefor. *Farmer* v. *Thomson,* 133 *Ga.* 94 (2) (65 S. E. 180) ; *Mayor &c. of Madison* v. *Wade,* 88 *Ga.* 699 (16 S. E. 21). By par. 1 of sec. 1 of art. 2 of the constitution of this State, "only those persons shall be allowed to vote who have been first registered in accordance with the requirements of law." Civil Code (1910), § 6395. Thus registration is a qualification of voters. *Price* v. *Hodges,* 172 *Ga.* 871 (159 S. E. 241). In determining whether a majority of the qualified voters of these districts voted for consolidation, no person should be considered as a qualified voter who was not on the registration list. It is true that the list of registered voters furnished to the managers of the election by the registrars absolutely controls them, and they have no power to allow any one to vote whose name is not on the list, or to refuse any one the right to vote whose name is on the list. *Fairburn School Dist.* v. *McLarin,* 166 *Ga.* 867 (supra) ; *Briscoe* v. *Between School Dist.,* 171 *Ga.* 820 (156 S. E. 654). This, however, does not require, in the case of a contest, that the votes of persons disqualified to vote should be counted.

The controlling question in this case is this: In determining whether a majority of the qualified voters of these districts voted for their consolidation, does the registration list furnished by the county registrars to the election managers conclusively establish that all persons appearing thereon are qualified voters of such districts? We think not. Prima facie this list establishes the fact that the persons whose names appear thereon are qualified voters of said districts; but this presumption can be rebutted by competent evidence showing the contrary. If it should appear that any person, male or female, whose name appears upon the registration list, was disqualified from voting at this election because of any of the grounds of disqualification embraced in article 2 of the constitution of this State, or was otherwise disqualified, then the board of education should reject such vote in determining whether a majority of the registered qualified voters in said districts voted in favor of consolidation. In determining this question the board of education should first determine the number of registered qualified voters residing in these districts, bearing in mind that persons not registered should not be counted, although

such persons were otherwise qualified to vote in these districts. After determining the number of registered qualified voters in these districts, they should then ascertain how many of these registered qualified voters voted for consolidation. If they should find that a majority of the registered qualified voters in these districts voted for consolidation, they should then declare the consolidation effective. On the contrary, if they should find that a majority of all the registered qualified voters in these districts had not voted in favor of consolidation, then they should declare the consolidation not effective.

Before leaving this subject it is well to consider the necessity for, and the purpose of, the constitutional provision requiring all voters to be registered in order to enable them to vote. Before the adoption of the constitutional amendment making registration a qualification to entitle a person to vote, this court held that registration added no qualification to the right to vote, but was necessary to identify the voters as persons authorized to vote. *Mayor &c. of Madison* v. *Wade,* supra. Since registration has been made by the constitution a qualification to entitle a person to vote, the list of registered voters is essential to show who are prima facie qualified and entitled to vote. Registration, however, does not entitle a person to vote who is otherwise disqualified to vote under the constitution of this State. So in *Chapman* v. *Sumner Consolidated School Dist.,* 152 *Ga.* 450 (2 *e*) (109 S. E. 129), it was held that a person was not lawfully qualified to vote in a school district bond election, although his name appeared on the certified list of registered voters furnished by the ordinary to the managers of the election and also on the general list of the county registrars filed with the clerk of the superior court, where it was shown by positive and uncontradicted testimony that he had not taken the oath prescribed by law to entitle a person to register, although such person was otherwise a qualified voter under the laws of this State. So in *Stephens* v. *Ball Ground School Dist.,* 153 *Ga.* 690 (113 S. E. 85), this court again held that although a person's name appears on the registration list, he is not a qualified voter if he has not taken the oath required by law, or if his name was entered on the registration list by some person without authority to make the entry. By parity of reasoning, no person whose name appears upon the list of registered voters is entitled to vote if he is otherwise disqualified, as by non-payment of taxes, non-residence, &c.

There is nothing to the contrary of what we now hold, in *Goolsby* v. *Stephens, Fairburn School Dist.* v. *McLarin,* and *Buchanan* v. *Woodland Consolidated School Dist.,* supra. Those cases related to elections held upon the question of issuing bonds under par. 1 of sec. 7 of art. 7 of the constitution of this State. This provision of the constitution makes two things conditions precedent to the issuing of bonds. One condition is that two thirds of the qualified voters at an election held for that purpose shall vote in favor of the issuance of bonds. The other condition is that two thirds so voting shall be a majority of the registered voters. In those cases the proceedings were instituted to validate bonds; and this court held that in determining whether the necessary two thirds of the voters had voted in favor of bonds, the ballots of voters not lawfully qualified to vote should be thrown out; but that in determining whether two thirds of the qualified voters at such election constituted a majority of the registered voters, disqualified voters could not be deducted from the number of persons appearing on the registration list furnished to the election managers in order to make the number of votes cast for bonds constitute a majority of the registered voters. The rulings in those cases were based upon the ground that the legislature had provided, as conditions precedent to the issuing of bonds, the approval of such issue by two thirds of the qualified voters voting at the election held for that purpose, and that the two thirds of the qualified voters so voting should constitute a majority of the registered voters. In those cases it was held, that, in determining whether these two conditions precedent existed, the court trying that issue could not deduct from the list of registered voters names of persons thereon who were otherwise disqualified to vote. The reasons for this ruling were fully set out in the first of the decisions last referred to, and need not be here repeated.

■ So we are of the opinion, applying the rulings above stated, that the trial judge did not err in refusing to grant the temporary injunction prayed. *Judgment affirmed. All the Justices concur.*