363 P.2d 1115

**Verl G. DIXON, Plaintiff,**

v.

**PROVO CITY COUNCIL et al., Defendants.**

No. 9522.

Supreme Court of Utah.

July 29, 1961.

---

Christensen, Novak, Paulson & Taylor, Provo, for plaintiff.

Ballif & Ballif, Young, Young & Sorensen, Provo, for defendants.

HENRIOD, Justice.

Petitioner sought a writ of mandate from this court praying that Provo city [1] authorities be required to take necessary steps to place on the ballot at the next general election, under pertinent initiative and referendum laws, an ordinance proposed by a sufficient number of sponsors. The petition is denied, with no costs awarded.

Because of the public interest engendered, we entertained the petition. On hearing the able arguments and examining the briefs and law applicable to this particular case, we have no choice but to deny the petition.

As to the somewhat semantic arguments presented as to the difference between the words, "repeal" and "amendment," and as applied to the facts of this case, we may state that had there been no objections other than interpretation of the words, lexicography would not have given us concern. Nor need we indulge ourselves in discussion of powers of repeal or amendment of municipal charters, since denial of the petition rests on two specific grounds not akin thereto:

The proposed ordinance, among other things, calls for the election of *"three commissioners and an auditor."* Such an election flies in the teeth of Section 10-6-2, Utah Code Annotated 1953, which provides that in cities of the second class "The Municipal government * * * is vested in a board of commissioners, consisting of a mayor and two commissioners, *to be elected at large; * * *."* (Emphasis ours.) It is obvious the statute requires that some candidate must be on the ballot denominated and elected *as mayor,* and that the other two members of the governing body must be candidates on the ballot denominated and elected *as commissioners.* Since the ordinance proposed here would have presented to the electors an unsanctioned form of government, the balloting and the election of *three commissioners* would be not only a waste of taxpayer time and money, but a nullity.

The proposed ordinance is also defective and might lead to an absurdity to which this court could not subscribe. It provides

---

1. A second class city.

that if the ordinance were accepted by popular vote at a special election held before the general election in November, 1961, that the *three commissioners* should be elected at such general election. There is no requirement as to when such special election shall be held and such provision well might create a hiatus between the special election and the general election in which Provo City would have no government and no governing body authorized to pay salaries, obligations and the like, or to perform the usual and necessary services rendered to the citizens. It is obvious from reading the sponsored ordinance that the sponsors (and certainly the other citizens of Provo) did not contemplate a cessation of city government, temporarily, or otherwise, but a continuity thereof. Such persistence would be interrupted under circumstances suggested above. The argument that the present *seven* councilmen could act as *three* commissioners until such commissioners were elected has no merit, since such councilmen would not be acting as councilmen "until their successors" were appointed, but as "commissioners," at least for any period of time that might exceed the effective date of the ordinance. It is difficult to understand how seven individuals could act as three, and neither such argument nor the proposed ordinance reflects who of the seven would be the privileged three. We disagree with any argument that Provo could not change to a commission government under our Constitution and statutes.

WADE, C. J., and McDONOUGH and CALLISTER, JJ., concur.

CROCKETT, J., concurs in the result.