23763.   WILSON et al. v. SANDERS, Governor, et al.

ARGUED OCTOBER 12, 1966—DECIDED OCTOBER 20, 1966—
REHEARING DENIED NOVEMBER 3, 1966.

*Arthur L. Crowe, Jr., G. Robert Howard, Robert E. Flournoy, Jr.,* for appellants.

*Arthur K. Bolton, Attorney General, Harold Hill, Assistant Attorney General, Alexander Cocalis,* for appellees.

ALMAND, Justice.   Art. XIII, Sec. I, Par. I of the Georgia Constitution of 1945 (*Code Ann.* § 2-8101), as amended by Ga. L. 1956, p. 637 and ratified on November 6, 1956, provides: "The Governor, the Attorney General, and the Secretary of State shall meet and determine whether a proposed amendment is general, and if not general, shall determine what political subdivision or subdivisions are directly affected by such proposed amendment. If a proposed amendment is general, the Governor shall cause such proposed amendment to be published in full once each week for three consecutive weeks immediately preceding the date of the election at which such proposed amendment is submitted, in one newspaper of general circulation in each Congressional District of the State.   If such proposed amendment is not general, the Governor shall cause such proposed amendment to be published in full in one newspaper of general circulation in each county in which the directly affected political subdivision or subdivisions are located.   In the event no such newspaper is located in such county, a newspaper in an adjoining county shall be used."

In 1965, the Georgia General Assembly passed a resolution proposing to amend Art. XI, Sec. I of the Georgia Constitution as follows: "No territory located within the boundaries of Cobb County shall be incorporated within the limits of any municipality, the major portion of which is located outside the territorial limits of Cobb County, without the approval of a majority of the qualified voters of Cobb County voting in an election held on that question."   Ga. L. 1965, p. 741.

On September 8, 1966, Joe M. Wilson and others alleging

themselves to be citizens and taxpayers of Cobb and DeKalb Counties brought their petition in Fulton Superior Court against Carl E. Sanders, Ben W. Fortson and Arthur K. Bolton in their respective capacities as Governor, Secretary of State and Attorney General, alleging that they were acting under the provisions of Art. XIII, Sec. I, Par. I of the Georgia Constitution.

It was alleged that on August 31, 1966, the defendants met and determined that the proposed amendment should be voted on (a) by the people residing in Cobb County and (b) in all municipalities in Georgia. Their petition was brought in four counts.

Counts 1 and 2 sought injunctive relief. Counts 3 and 4 sought the issuance of the writ of mandamus. In counts 1 and 3 petitioners contend that the proposed amendment should be submitted only to the voters of Cobb County. In counts 2 and 4, they contend that it should be submitted to all of the voters in the state. The prayers in count 1 were that the defendant Fortson be restrained from holding the election on any other basis than a general basis so that only the voters of Cobb County would be permitted to vote on the proposed amendment. In count 2, it was prayed that Fortson be restrained from submitting the proposed amendment on any other basis than as a general amendment. As to the prayers for a writ of mandamus, count 3 prayed for defendants to show cause "why a mandamus should not be issued against them requiring them to declare said constitutional amendment directly affecting only Cobb County and requiring defendant Fortson to submit this amendment only to the registered voters of Cobb County qualified to vote for members of the General Assembly." Count 4 prayed that defendants show cause "why a mandamus should not be issued against them requiring them to declare that said constitutional amendment directly affects the entire State of Georgia and requiring defendant Fortson to submit this amendment to the registered voters of the entire State of Georgia, qualified to vote for members of the General Assembly."

In response to a rule nisi, and on a hearing thereof, the motion of the defendants to dismiss the petition was sustained. The case is here on appeal for us to review this order.

We agree with counsel for appellees that the two decisive issues raised by their motion to dismiss are "(a) Will the judicial power be exerted to stay the course of legislation while it is in the process of enactment? (b) Will the writ of mandamus or an injunction lie to control or change action taken by the Governor, the Secretary of State, and the Attorney General, in the exercise of the discretion vested in them by the Constitution?"

■ Injunctive relief. In the case of *Gaskins v. Dorsey,* 150 Ga. 638 (104 SE 433), the plaintiffs sought to enjoin the Governor of Georgia and other officials from submitting a proposed constitutional amendment to a vote of the people. In a full bench decision it was there held: "Considering the steps necessarily taken in the course of legislation and submission of the proposed amendment to the people, an amendment to the Constitution is in its formative stages until the electorate of the state have cast their ballots thereon in a general election. While the amendment is in such formative state and in the course of progression from the proposal to the general election and ratification, it is analogous to ordinary legislation by the General Assembly, which is in its formative state or state of progression from the time of the introduction of a bill in the legislature until it is finally passed by the requisite constitutional majority and has received the signature of the Governor. The judicial power will not be exerted, by writ of error or otherwise, to stay the course of legislation while it is in process of enactment."

The principle that the judicial department will not interfere with the legislative department in the enactment of legislation or adoption of proposed amendments to the Constitution is applicable here. The reason is that the action of the defendants in determining "whether a proposed amendment is general, and if not general, shall determine what political subdivision or subdivisions are directly affected by such proposed amendment" is a part of the legislative process in submitting a proposed amendment to the Constitution to the voters of the state.

Counts 1 and 2 of the petition stated no cause for injunctive relief.

■ The writ of mandamus. Art. XIII, Sec. I, Par. I of the Georgia Constitution vests in the defendant state officials the

power to *determine* how and in what manner a proposed amendment to the Constitution shall be submitted to the voters. "To determine has been defined to mean to adjudge, to come to a decision, to decide upon after investigation, to ascertain the truth about a transaction, to perform a judicial act, to settle by judicial sentence and to try and put an end to." *Smith v. Board of Education,* 174 Ga. 735, 739 (164 SE 41).

The allegations of the petition disclose that the defendant officials met and determined how the proposed amendment should be submitted to the voters for ratification or rejection. In *Southern Bell Tel. &c. Co. v. Public Service Commn.,* 203 Ga. 832 (49 SE2d 38), this court said: "But even if the existence of a remedy at law would show that the court of equity was without jurisdiction to render the judgment here, mandamus, being a process to require a public official to act, is not available to control or change his action taken in the exercise of a discretion vested in him by the law, and would not be available to the petitioner." Mandamus is ordinarily considered as a remedy for official inaction. *City of Atlanta v. Wright,* 119 Ga. 207 (45 SE 994); *Richmond County v. Steed,* 150 Ga. 229, 231 (103 SE 253). Mandamus is not the proper remedy to compel "the undoing of acts already done or the correction of wrongs already perpetrated, and . . . this is so, even though the action taken was clearly illegal." 38 CJ 592, § 70.

In effect, the petition seeks a review of a determination by the defendant officials and seeks to compel by the writ of mandamus the making of a new or different determination. This is not the proper function of a writ of mandamus.

The petition was properly dismissed.

*Judgment affirmed. All the Justices concur, except Duckworth, C. J., who dissents.*

DUCKWORTH, Chief Justice, dissenting. To my mind one thing stands out too plainly to be overlooked, and that is—that since this proposed amendment refers to every municipality in this state outside of Cobb County, it is general in scope, concerns every citizen in the state, and hence should be voted upon by every voter of the state. Its sole purpose is to control the manner in which the corporate boundaries of any city outside of

Cobb County might be extended in that county, thus affecting Cobb County, every existing city in the state and every future charter the legislature might grant outside of Cobb County— thus affecting every citizen of this state. It is foolish to say that this might involve the City of Whigham in Grady County, 250 miles away; hence the people of Whigham but not the other people in Grady County outside of Whigham should vote on it.

I think it was unsound for the Governor and his associates to order that only voters in the countless municipal corporations of this state vote upon the amendment along with the voters of Cobb County. Their act can not be justified as an exercise of a sound discretion because it is unquestionably a bold violation of the Constitution and laws. In such a case both injunction and mandamus are available remedies. Why should this court sit here idly by while the proposed amendment passes through the process of adoption at exorbitant expense to the taxpayers only to wait until that time is over and then later rule that it was illegally adopted and is void—which must certainly be our holding if it is voted on only by residents of municipalities and Cobb county?

The proper function of courts is to render judgments to fix rights by deciding cases. The majority in my opinion completely miss the mark when they cite cases asserting that courts will not interfere with the process of legislation before it is finished. Amending the Constitution is not legislation in the true sense of the word, and too, the relief sought here neither stops nor hurtfully affects this amendment. Indeed, it would give the judicial help needed to avoid waste of money and time to obtain only a void amendment, and I think the remedies sought should be applied. If it is too late to advertise legally, it is not too late to stop the waste of money to further advertise it illegally. I would reverse and direct that the proposed amendment be advertised as required, and that it be placed on the ballot and be voted on state-wide.

The proposed amendment is a monstrosity, and our Constitution will profit by its destruction. Yet, the people and not the Governor and his associates should have this right. Vetoes of proposed constitutional amendments are not permitted under the

Constitution. *Code Ann.* § 2-8103; Const. of 1945. Nor was the authority granted to the Governor, the Attorney General, and the Secretary of State to determine whether an amendment is general or local in the constitutional amendment of 1956 (*Code Ann.* § 2-8101; Const. of 1945, amended Ga. L. 1956, p. 637; ratified November 6, 1956) intended to amount to one. Who knows how many new municipal corporations will be created by the legislature? Who is so blind that he would give Cobb County or the people of Cobb County power to prevent municipalities from crossing its county lines? Who would question the right of every voter of the state to cast his vote on whether such an unreasonable amendment to his Constitution is adopted? Who knows that the legislature will not, at any time, exercise its undeniable power and grant charters combining entire counties, yet be stymied by the people of Cobb County who would prevent such legislation involving any part of the territory of Cobb County? Creation, changing and abolishing municipalities are powers solely within the legislative function. No sensible or tangible reason now appears why the Constitution should concern itself with such matters; and before the Constitution, now for the first time, does so, the people who are the authors of the Constitution should be allowed to make that radical decision.

I am unwilling to remain passive when this court is asked to speak out clearly on this vital constitutional question.