S05A0236. O'KELLEY et al. v. COX.

(604 SE2d 773)

CARLEY, Justice.

In March of 2004, the General Assembly approved Senate Resolution 595, which submits to the voters of this state at the general election to be held on November 2 of this year a proposal to amend Article I of the 1983 Georgia Constitution by adding a new Section IV. On September 16, 2004, Appellants herein filed a complaint in the Superior Court of Fulton County seeking to enjoin Appellee from putting that proposed amendment on the November 2, 2004, General Election Ballot. On September 29, 2004, the trial court denied injunctive relief and dismissed the complaint. The notice of appeal was filed on September 30, 2004. We expedited the briefing schedule and heard oral argument on October 19, 2004. The issue presented in this appeal is not whether that amendment, if approved by the electorate, can itself withstand a constitutional attack based upon the so-called "single subject" rule of Art. X, Sec. I, Par. II or any other provision of the Georgia Constitution of 1983. Compare *Goldrush II v. City of Marietta*, 267 Ga. 683, 685 (2) (a) (482 SE2d 347) (1997); *Carter v. Burson*, 230 Ga. 511, 518 (3) (198 SE2d 151) (1973). The election has yet to be held, and the amendment thus remains only a proposal. The sole question raised by this case is whether the judiciary is authorized to interfere in the constitutional amendment process, and prevent the voters from expressing their approval or disapproval of the proposal which their elected representatives, by a two-thirds vote of each house of the General Assembly, have determined should be submitted to them. On this issue, *Gaskins v. Dorsey*, 150 Ga. 638 (104 SE 433) (1920), is applicable, controlling, and dispositive. *Gaskins* makes it clear that the courts of Georgia cannot encroach upon the legislative process, and do not have any authority

to bar the general election on November 2, 2004 from proceeding exactly as it is presently scheduled.

The judiciary is vested with the power to determine the constitutionality of legislation, but at present there is simply no legislation which can be the subject of a constitutional attack. All that does exist is a resolution of the General Assembly proposing that the Georgia Constitution be amended so as to add a new Section IV to Article I.

> Considering the steps necessarily taken in the course of legislation and submission of the proposed amendment to the people, an amendment to the constitution is in its formative stages until the electorate of the State have cast their ballots thereon in a general election. While the amendment is in such formative state and in the course of progression from the proposal to the general election and ratification, it is analogous to ordinary legislation by the General Assembly, which is in its formative state or state of progression from the time of the introduction of a bill in the legislature until it is finally passed by the requisite constitutional majority and has received the signature of the Governor. The judicial power will not be exerted, by writ of error or otherwise, to stay the course of legislation while it is in process of enactment. This applies both to ordinary legislation and the analogous course of an amendment to the constitution from the time of the introduction of the act proposing the amendment until the electors have acted. "It would be a stretch of power in the judiciary to restrain by its process, mesne or final, a law enacted by the General Assembly, in a formative state and before it became operative by the vote of the people to be affected thereby, which vote alone could consummate its validity, under the terms of the act itself." [Cits.]

*Gaskins v. Dorsey,* supra at 639-640. Accordingly, the amendment in question certainly can be challenged in the event that it is "enacted" by virtue of approval by the voters. See *Carter v. Burson,* supra. However, the judiciary does not have any jurisdiction to block further consideration of the proposed amendment at this formative stage in the legislative process. *Gaskins v. Dorsey,* supra. Compare *Mead v. Sheffield,* 278 Ga. 268 (601 SE2d 99) (2004) (post-election challenge based upon form of the ballot).

Reliance on *Cheney v. Ragan,* 151 Ga. 735 (108 SE 30) (1921) as authority for a contrary holding is misplaced, because it did not involve an attack on a proposed constitutional amendment.

> It will be readily seen that there is a fundamental difference between the case of *Gaskins v. Dorsey,* supra and the [*Cheney*] case. The election in the [*Cheney*] case, while it might become the basis of action by the General Assembly, had in no way become a part of the legislative enactment . . . .

*Cheney v. Ragan*, supra at 743. Thus, *Cheney*, unlike *Gaskins*, did not implicate the constitutional principle of separation of powers. In its very well-reasoned order refusing to enjoin the election as to the proposed constitutional amendment, the trial court in this case noted as follows:

> In every election case cited . . . where judicial intervention was authorized or upheld, the legislative process was complete. The law or ordinance from which the illegality arose was, in fact, a law. A proposed constitutional amendment does not become law until passed upon by the voters. Until that time, its effects are entirely speculative. It can have no detrimental effect until ratified. If it fails, any irregularity or impropriety in the amendment process is moot. An unsuccessful amendment is no different than any other unsuccessful proposed legislation. If the amendment is voted upon and passes, it may be challenged through post election measures. But, until there is a law or amendment in existence the [c]ourts have nothing upon which to act and may not intervene in the legislative process. . . . Insofar as the Plaintiffs seek a declaratory ruling on the validity of the proposed amendment the [judiciary] has no authority to issue declaratory judgment[s] on questions in the abstract. Until such time as the electorate votes, whether the General Assembly acted properly is not a matter ripe for resolution by the courts.

The fallacy in Appellants' argument is their insistence that they have a legal right not to participate in an election wherein a proposed constitutional amendment may not withstand judicial scrutiny in the event it is passed. However, their rights are limited to those available to any other citizen of this state who is opposed to proposed legislation. They are entitled to campaign against enactment of the proposed amendment and, if they are unsuccessful in that effort, they may bring a challenge to its constitutionality on any arguably meritorious basis. At this time, however, they have no right to invoke the power of the judiciary

to enjoin enactment of legislation or adoption of a proposed constitutional amendment, and when designated state officials determine how a proposed constitutional amendment will be submitted to the voters, such submission, being a part of the legislative process, will not be enjoined.

*Wilson v. Sanders*, 222 Ga. 681 (1) (151 SE2d 703) (1966).

*Judgment affirmed. All the Justices concur, except Hunstein, J., who concurs specially, and Sears, P. J., and Benham, J., who dissent.*

HUNSTEIN, Justice, concurring specially.

Contending that the proposed amendment at issue in this case violates the Georgia Constitution's Single Subject Rule and is being presented to the voters through affirmatively misleading ballot language, appellants ask this Court to overrule the trial court's refusal to enjoin appellee from placing the proposed amendment on the November 2 ballot. Relying upon the "general rule" that courts of equity will not interfere in matters of elections, the majority affirms the trial court, asserting that "the judiciary does not have *any* jurisdiction to block further consideration of the proposed amendment." (Emphasis supplied.) Majority Opinion, p. 573. The dissent would recognize an exception to the general rule in those rare cases where Georgia citizens may be damaged by "entering the voting booth and being confronted with a ballot measure that proposes amending the constitution in multiple ways," (footnote omitted), Dissenting Opinion, p. 580, and thus would remand the case to the trial court to determine whether the proposed amendment violates the Single Subject Rule.

While I agree with the majority that the constitutional principle of separation of powers limits the judiciary's involvement in matters of elections, Georgia case law recognizes exceptions to the general rule that courts of equity will not enjoin an election. *Cheney v. Ragan*, 151 Ga. 735, 741 (108 SE 30) (1921). "One of these exceptions is where the constitutional rights of citizens and taxpayers are sought to be invaded by an attempt to make an unconstitutional or inapplicable law operative through the means of an election. [Cits.]" *Marbut v. Hollingshead*, 172 Ga. 531, 538 (158 SE 28) (1931). The cases cited by the *Marbut* Court in support of its ruling were based on the principle "that such election would bring about confusion, subject citizens and taxpayers to damages, and cause a multiplicity of suits." Id. See also *Bergman v. Dutton*, 203 Ga. 672, 680 (48 SE2d 101) (1948) (" 'if under the guise of an election which is really unauthorized by law, the property or person of the citizen is imperiled, equity will interfere' "). I realize that none of the cases that recognize an exception to the

general rule have involved an attempt to enjoin a proposed constitutional amendment. But this Court has jurisdiction over election cases, Art. VI, Sec. VI, Par. II (2), and thus we have the authority under our equity jurisdiction "to do complete justice." OCGA § 23-1-7. "To say that [the general] rule is without exception seems to be purely arbitrary." *Cheney,* supra at 741. Accordingly, while the gravity of a ballot measure proposing an amendment to our State Constitution must necessarily weigh on the decision whether intervention in equity is required, I cannot agree with the majority that such an intervention is outside our jurisdiction.

I agree in principle with the dissent's position that the judiciary may enjoin an election involving a proposed constitutional amendment in those very rare situations where the proposal violates the Single Subject Rule. An injunction is appropriate in light of the serious consequences to the democratic election process, as discussed by the dissent, that are created when voters are presented with a proposal with that particular constitutional flaw. Nevertheless, I cannot join with the dissent because of the manner in which the dissent would dispose of the case before us.

The proposed amendment at issue here is on the ballot for the general election scheduled November 2, 2004. Advanced voting has already begun; in less than one week the precinct polls will open and the final votes will be cast. Yet the constitutionality of the proposed amendment that appellants seek to enjoin has never been addressed. The trial court that heard appellants' complaint did not reach the issue whether the proposed amendment violates the Single Subject Rule, nor is it for this Court to make that initial determination. The dissent proposes to remand the case to the trial court with direction that it reach the merits of appellants' challenge. But as matters stand now, there is not sufficient time left before the November 2 general election for the parties to present their arguments and the trial court to research and rule upon this difficult issue of constitutional law. It would be a disservice to all three branches of our government — the legislative, which passed the proposed amendment; the executive, which has the obligation to present the proposed amendment on the ballot for the November 2 general election; and the judiciary, both at the trial and appellate levels, which must assess the constitutionality of the proposed amendment — to insist that this matter be resolved in less than one week. Most importantly, it would be a disservice to the citizens of Georgia who have the right to cast their vote for or against a proposed amendment currently on the ballot that has not been declared unconstitutional by any court in this State.

I agree with the dissent that voters do sustain damage when they are called upon to vote for a ballot measure that violates the Single Subject Rule and that the democratic process must necessarily suffer

as a result. But voters and the democratic process also suffer when time constraints compel the swift resolution of complex constitutional issues. Such rushed rulings can serve only to undermine the public's faith in the legitimacy and accuracy of the judicial process.

Therefore, under the circumstances present in this case, where there has been no legal determination that the proposed amendment violates the Single Subject Rule, I believe it better serves the law and the citizens of Georgia to allow the proposed amendment to remain on the November 2 general election ballot. Should the proposed amendment be approved by a majority of the voters of Georgia on November 2, any damage the voters may have sustained by the alleged violation of the Single Subject Rule may be ameliorated by post-election judicial review of the amendment's constitutionality. It is for this reason that I join the majority's opinion in judgment only.

SEARS, Presiding Justice, dissenting.

The Georgia Constitution protects the individual's right to vote as his conscience dictates by prohibiting the state from seeking to influence the electoral process. These constitutional prohibitions are essential to our democratic republic; without them, it is impossible to ensure that election results represent a true expression of the people's will. Chief among these is the prohibition against ballot measures that would amend our Constitution in multiple ways. Such measures are intended to protect Georgia voters from impermissible "tying arrangements" that would amend the state constitution by stealth. Today, a majority of this Court holds that the courts of this state have no power to hear the complaints of citizens who assert that a ballot measure seeks to amend the constitution in multiple ways. In so doing, the majority fails in its duty to protect Georgia voters from coercion and fraud. Because I cannot countenance such a decision, I must dissent.

In March 2004, the Georgia House and Senate approved Senate Resolution 595, which proposes amending the Georgia Constitution ("the Proposed Amendment"). If approved by voters in the general election, the Proposed Amendment will add a new Section IV to Article I of the Constitution. Appellants filed suit to enjoin the election, arguing (among other things) that the Proposed Amendment violates Article X, Section I, Paragraph II of the Georgia Constitution ("the Single Subject Rule"). Appellee filed a motion to dismiss, which the trial court granted on the sole ground that *Gaskins v. Dorsey*[1] deprived it of authority to grant any relief until after the electorate votes on whether to ratify the Proposed Amendment. As

---

[1] 150 Ga. 638 (104 SE 433) (1920).

explained below, the majority errs by affirming that dismissal.

1. Our Georgia Constitution's Single Subject Rule provides that:

> When more than one amendment is submitted at the same time, they shall be so submitted as to enable the electors to vote on each amendment separately, provided that one or more articles or related changes in one or more articles may be submitted as a single amendment.[2]

A proposed ballot measure violates the Single Subject Rule if its text relates to more than one subject and it has at least two distinct and separate purposes which are not germane to each other.[3]

The Single Subject Rule's purpose is clear: it is intended to prevent ballot initiatives that seek to amend the Constitution in multiple ways within the scope of a single measure. Faced with such a measure, voters are confronted with several different subjects about which they may hold sincere yet opposing points of view, but for which they may cast only one vote. As our precedent makes clear, Georgia's Constitution will not countenance placing voters in that dilemma.

> No voter should be compelled, in order to support a measure which he favors, to vote also for a wholly different one which his judgment disapproves, or, in order to vote against the proposition which he desires to defeat, to vote also against the one which commends itself to the approval of his judgment. When he is thus compelled, if he votes at all, there is something closely akin to coercion when his ballot is cast.[4]

Accordingly, it is beyond refute that every proposed amendment to our Constitution must be presented to the voters on its own, and it must either succeed or fail on its own merits, " 'without, on the one hand, receiving any adventitious aid from another and perhaps more popular [measure], or, on the other hand, having to carry the burden of supporting a less meritorious and popular measure.' "[5] In this regard, the Single Subject Rule operates "to prevent an imposition or deceit of the public, to afford voters freedom of choice, and to prevent 'logrolling,' 'hodge-podge legislation,' or 'jockeying' — that is, to

---

[2] Ga. Const., Art. X, Sec. I, Par. II.

[3] *Amendments Embracing More Than One Subject*, 16 AmJur2d Constitutional Law, § 34. See *Carter v. Burson*, 230 Ga. 511, 518-519 (198 SE2d 151) (1973), quoting *Rea v. City of Lafayette*, 130 Ga. 771, 773 (61 SE 707) (1908).

[4] *Carter*, 230 Ga. at 519, quoting *Rea*, 130 Ga. at 772.

[5] Id.

prevent voters from being required to vote for something of which they disapprove in order to register approval of other propositions tied up therewith."[6]

This Court has previously analogized the Single Subject Rule to: (1) the requirement that two or more general propositions may not be combined in a single ballot measure; and (2) the requirement of single-subject legislation.[7] Thus, we have held that a single ballot measure may not ask voters to approve bonds both for improving schools and for repairing infrastructure, since voters who favor school improvement would be forced to also approve infrastructure repairs, even if they did not support such repairs.[8] Combining these two separate subjects in one measure would be "contrary to [the] freedom of choice on the part of the voters, and the fair and free expression of the public judgment, which should prevail in all elections."[9] Elections on such measures "should not be permitted by the courts."[10]

Notably, a violation of the Single Subject Rule adversely impacts Georgia's voters regardless of whether the ballot measure at issue succeeds or fails. In either instance, those Georgia voters who are torn between divergent opinions regarding various subjects contained in a multiple-subject amendment measure will encounter the unconstitutionally coercive dilemma of being forced to choose between their deeply-held convictions regarding one subject and their equally sincere views regarding one or more other subjects contained in the proposal. This is the very evil against which the Single Subject Rule is aimed.

Furthermore, the Single Subject Rule serves to protect the integrity of both our State Constitution and the orderly democratic processes set forth by the Constitution for its own amendment. The Rule requires that voters be permitted to cast votes that are untainted by the coercive effects of unconstitutional "tying arrangements" among several different subjects within a single amendment measure appearing on a ballot. When separate and distinct questions are combined into one ballot measure, the method of submitting the measure to voters is patently unconstitutional. Worse yet, it creates a palpable risk that "no true expression of the will of the people can

---

[6] *Amendments Embracing More Than One Subject*, 16 AmJur2d Constitutional Law, § 34.
[7] See *Carter*, 230 Ga. at 519; *Rea*, 130 Ga. at 777; *Hammond v. Clark*, 136 Ga. 313, 327 (71 SE 479) (1911); *Brown v. State of Ga.*, 79 Ga. 324, 326 (4 SE 861) (1887). Due to the relative paucity of legislative attempts to place unconstitutional multiple subject amendment measures before the voters addressed in our precedent, these analogous cases are significant.
[8] *Rea*, 130 Ga. at 777.
[9] Id.
[10] Id.

be obtained" through the election process.[11]

2. Clearly, the majority errs by holding that this case is controlled by *Gaskins v. Dorsey*.[12] This Court has never addressed the question of whether pre-election relief is available for violations of the Single Subject Rule due to the General Assembly's approval of a ballot measure proposing a multi-subject constitutional amendment.[13] As a general rule, we will not attempt to interfere with the legislative function, even within the context of amending our Constitution. In *Gaskins v. Dorsey*, we held that courts generally have no jurisdiction to consider the validity of a proposed constitutional amendment between the time the legislature approves ballot language and the Secretary of State proclaims the results of a popular vote. During that interval, the *Gaskins* decision reasons, an amendment is still in its formative stages, analogous to legislation that is not yet signed or vetoed by the Governor, and a challenge to the amendment is not yet ripe for review.[14] Accordingly, it is clear that if appellants in this case were seeking to challenge the Proposed Amendment's substance, alleging (for example) that its application would violate principles of due process or equal protection, the *Gaskins* decision would preclude judicial review until after the Proposed Amendment was approved by the electorate and became law.

The reasoning of *Gaskins*, however, does not withstand scrutiny against an argument that a constitutional amendment ballot initiative violates the Single Subject Rule. As explained in Division 1, our precedent is clear that the Single Subject Rule is designed to protect Georgia's citizens from entering the voting booth and being confronted with a ballot measure that proposes amending the constitution in multiple ways.[15] When a multiple-subject amendment measure appears on the ballot, the electorate is forced to participate in a

---

[11] *Rea*, 130 Ga. at 773-774.

[12] See note 1, supra.

[13] This Court has previously reviewed ballot language after an election to ensure it was sufficient to enable voters to ascertain which constitutional amendment they were voting on. See *Donaldson v. Dept. of Transp.*, 262 Ga. 49, 51-52 (414 SE2d 638) (1992); *Sears v. State of Ga.*, 232 Ga. 547, 555 (208 SE2d 93) (1974). These cases did not address violations of the Single Subject Rule, however, which is an altogether separate and distinct issue.

[14] 150 Ga. at 639-640.

[15] See, e.g., *Carter*, 230 Ga. at 519 ("*no voter*" should be forced to vote on a ballot initiative that violates the Single Subject Rule; when a voter is so forced, it is akin to coercion) (emphasis supplied); *Rea*, 130 Ga. at 773-774 (violations of the Single Subject Rule create a risk that "no true expression of the *will of the people* can be obtained") (emphasis supplied); *Rea*, 130 Ga. at 777 (multiple subject ballot measures are "contrary to [the] *freedom of choice on the part of the voters*, and the free and fair expression of *public judgment*") (emphasis supplied). Notably, we have just recently held that " 'nothing could possibly constitute a more vitally essential element in an election than the contents of the official ballot furnished to the voters.' " *Mead v. Sheffield*, 278 Ga. 268 (601 SE2d 99) (2004), quoting *Alexander v. Ryan*, 202 Ga. 578, 582 (43 SE2d 654) (1947).

constitutionally impermissible election and the integrity of the democratic election process is put at risk. Faced with the Hobson's choice of having to vote for a measure they do not endorse in order to vote for a different measure they support, voters are disenfranchised from the right to vote their conscience on all measures put before them. As recognized by legal scholars, if such an election is permitted, harm occurs in conjunction with the act of voting.[16] Accordingly, the damage inflicted by a ballot measure that violates the Single Subject Rule is entirely different from the damage caused by the substance of a single-subject amendment that may have adverse consequences once it passes into law. In the latter situation, the voter suffers no harm when casting his ballot and there will be adverse implications only if the measure wins a popular vote. Therefore, a legal challenge to an amendment's substantive content is not ripe for review until after it becomes law. When the Single Subject Rule is violated, however, harm occurs at the moment a voter casts his ballot, and will be suffered regardless of whether the measure passes or not. Additionally, a violation of the Single Subject Rule indicates that the General Assembly has exceeded the scope of its constitutional authority and any resulting ballot measures are facially invalid. Thus, claims alleging that a proposed ballot measure violates the Single Subject Rule have to be cognizable before an election takes place; otherwise, no recourse exists for those Georgia voters who would seek to invoke their constitutional right to avoid multiple subject amendment measures.

This distinction has been recognized by the appellate courts of other states. "Generally, pre-election challenges to the substantive constitutional validity of referendum measures are not ripe for determination by a court, **while pre-election challenges to the form or facial constitutional validity of referendum measures are ripe for judicial scrutiny.**"[17] As recently stated by another state's appellate court:

> [D]eferring review [of a ballot measure] until after an election primarily applies when the challenge is to the substance of the measure. **The rule, however, does not preclude pre-election review when the challenge is based upon a claim the proposal violates a provision governing the manner or form in which the proposal must be considered by the voters. . . . "** '[T]he presence of an

---

[16] Gordon & Magleby, *Pre-Election Judicial Review of Initiatives and Referendums*, 64 Notre Dame L. Rev. 298, 315-316 (1989).

[17] *City of Memphis v. Shelby County Elections Comm.*, 2004 Tenn. LEXIS 802 at p. 19 (Tenn. 2004).

invalid measure on the ballot steals attention, time, and money from the numerous valid propositions on the same ballot. It will confuse some voters and frustrate others, and an ultimate decision that the measure is invalid, coming after the voters have voted in favor of the measure, tends to denigrate the legitimate use of the initiative procedure.' " . . . **Such a defect could not be cured by post-election relief because it is not possible to determine which of the proposed changes would have been approved by the voters had they been submitted as separate amendments.**[18]

A large number of other states also permit pre-election review to address procedural defects in ballot initiatives, including allegations that multiple subjects are contained in a single measure.[19]

The logic of these cases is persuasive for a number of reasons. First, at this juncture, the dispute concerning whether the ballot language violates the Single Subject Rule is concrete and specific. The record in this case will not be improved by waiting until after the election to consider the merits of appellants' complaint. Furthermore, consideration of appellants' claim will not usurp the legislative function, as the General Assembly's enactment of Senate Resolution 595 is final and complete; the legislation at issue in this dispute authorizing a proposed amendment and related ballot language has been enacted and there is nothing left for the legislature to do. In this regard, the fact that the Single Subject Rule is in the Constitution rather than the General Assembly's rules is very significant. Because the Rule is part of our Constitution, it should be invoked readily by the courts, so long as doing so does not intrude upon the legislative function.[20]

---

[18] *Californians for an Open Primary v. Shelley*, 121 Cal. App.4th 222, 228 (2004) (discussing and quoting *Senate of California v. Jones*, 988 P2d 1089 (Cal. 1999)) (emphasis supplied). See 64 Notre Dame L. Rev. at 313-317.

[19] See *Boucher v. Engstrom*, 528 P2d 456, 460 (Alaska 1974), overruled in part on other grounds, *McAlpine v. University of Alaska*, 762 P2d 81 (Alaska 1988); *Donovan v. Priest*, 931 SW2d 119, 121 (Ark. 1996); *Clear Elections Inst. v. Brewer*, 2004 Ariz. LEXIS 112 at p. 3 (Ariz. 2004); *Floridians Against Casino Takeover v. Let's Help Fla.*, 363 S2d 337, 339-340 (Fla. 1978); *Coalition for Political Honesty v. State Bd. of Elections*, 415 NE2d 368, 378-382 (Ill. 1980); *Bowe v. Secretary of the Commonwealth*, 69 NE2d 115, 127-128 (Mass. 1946); *Michigan v. City Council of Detroit*, 648 NW2d 202, 204-205 (2002); *Missourians to Protect the Initiative Process v. Blunt*, 799 SW2d 824, 827-828 (Mo. 1990); *Brant v. Beerman*, 350 NW2d 18, 21-22 (Neb. 1984); *In re Initiative Petition No. 314*, 625 P2d 595, 603, 608 (Okla. 1980); *Town of Hilton Head Island v. Coalition of Expressway Opponents*, 415 SE2d 801, 806 (S.C. 1992); *City of Memphis v. Shelby County Elections Comm.*, supra; *Dixon v. Provo City Council*, 363 P2d 1115, 1116 (Utah 1961); *Seattle Bldg. & Constr. Trades Council v. Seattle*, 620 P2d 82, 86 (Wash. 1980); *Burnell v. City of Morgantown*, 558 SE2d 306, 313-314 (W. Va. 2001).

[20] See Rudd, *No Law Shall Embrace More Than One Subject*, 42 Minn. L. Rev. 389 (1957).

Moreover, the factual controversy over whether the General Assembly complied with the procedural requirements of the Georgia Constitution when enacting Senate Resolution 595 must be determined before the election because it is necessary to assess whether the General Assembly properly invoked the electoral process with regard to Resolution 595.[21] If the General Assembly acted improperly by authorizing a multiple-subject amendment proposal, then it acted beyond the scope of its constitutional power and any related enactments would be facially invalid.

Finally, and most importantly, if the Single Subject Rule has in fact been violated and the election is permitted to go forward, the electorate will be injured when confronted with the unconstitutional dilemma of a multiple-subject amendment measure on their ballots. This, as explained above, is altogether inconsistent with the precepts of our Georgia Constitution and the only way to protect voters from this unconstitutional harm is with pre-election relief.

Accordingly, appellants' claim that the language approved by the General Assembly in Senate Resolution 595 violates the Single Subject Rule is ripe for review at this time and that our courts have jurisdiction to consider the claim. It follows that the trial court erred by dismissing appellants' complaint.

3. "This court will never pass upon the constitutionality of an act of the General Assembly unless it clearly appears in the record that the point was directly and properly made in the court below and distinctly passed on by the trial judge."[22] The record in this matter shows that the trial court did not rule upon whether the Proposed Amendment violated the Single Subject Rule, as set out in our State Constitution. It follows that this matter should be remanded to the trial court for such ruling, and the majority errs by holding otherwise.

4. Senate Resolution 595 concerns issues about which many of our citizens have strong personal views — but those issues are in no way part of the dispute in this appeal. This appeal is concerned solely with the procedures followed by the legislature in enacting Resolution 595. I question whether this distinction is lost on the majority.

Times of passionate public debate frequently require the judiciary's steadying influence in order to ensure adherence to constitutionally-prescribed processes and procedures. This is especially true with regard to the procedures for amending our state constitution and the constitutional protections guaranteed to the voters of this state. Today, a majority of this Court fails to uphold the constitutional prohibition against the legislature's enactment of ballot measures

---

[21] See 64 Notre Dame L. Rev. at 314; *City of Memphis*, 2004 Tenn. LEXIS 802 at 19-20.
[22] *Bentley v. Anderson-McGriff Hardware Co.*, 181 Ga. 813 (184 SE 297) (1936).

that would amend our Constitution in multiple ways. As a result, Georgia's voters will suffer harm on election day. Even worse, our democratic electoral processes will be badly stained. I cannot participate in such a decision, and I cannot sanction such a result. Therefore, I dissent.

I am authorized to state that Justice Benham joins me in this dissent.

DECIDED OCTOBER 26, 2004.

*Alston & Bird, John E. Stephenson, Jr., Jeffrey J. Swart, Gerald R. Weber, Jr., Elizabeth L. Littrell, Jack H. Senterfitt*, for appellants.

*Thurbert E. Baker, Attorney General, Stefan E. Ritter, Assistant Attorney General*, for appellee.

*Jewett & Clark, Robin F. Clark, Arnall, Golden & Gregory, Scott C. Titshaw, Kilpatrick Stockton, Miles J. Alexander, Alexander S. Clay, Michael W. Tyler, Jill Warner*, amici curiae.